David Hoyle SPRINGER, Appellant,

v.

STATE of Alaska, Appellee.

No. 4930/6288.

Court of Appeals of Alaska.

June 24, 1983.

Allen McGrath and Russell Winner, Graham & James, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and SERDAHELY, Superior Court Judge.*

## OPINION

SERDAHELY, Superior Court Judge.

On February 10, 1977, David Hoyle Springer and Charles W. Bresser were indicted by a grand jury for the robbery and shooting of Alfred W. Harris. Count I of the indictment charged Springer and Bresser with robbery, AS 11.15.240, and use of a firearm during commission of a robbery, AS

* Serdahely, Superior Court Judge, sitting by assignment made pursuant to article IV, section

11.15.295. Count II charged a violation of AS 11.15.150, shooting with intent to kill, wound, or maim.

At the time of the indictment, Springer was outside of the state of Alaska. He was ultimately extradited from Minnesota. Springer entered pleas of not guilty at his arraignment on the day following his return. On the first day of trial, June 18, 1979, Springer moved to dismiss the action under Criminal Rule 45 for violation of his speedy trial rights. The motion was denied, and a jury found Springer guilty on both counts. Superior Court Judge J. Justin Ripley sentenced Springer to fifteen years on Count I and twenty years on Count II, to be served consecutively. Springer subsequently filed an application for post-conviction relief; Judge Ripley denied the application on August 7, 1981.

Springer appeals his convictions on several grounds. He claims his right to a speedy trial was violated under Criminal Rule 45, the sixth amendment to the United States Constitution, and article I, section 11 of the Alaska Constitution. Springer also claims that he is entitled to a new trial because he was denied his constitutional right to effective assistance of counsel. Finally, Springer asserts that the system by which he received appointed counsel violated his constitutional right to equal protection of the law. We affirm Springer's convictions.

## I. FACTS

In the early morning of December 9, 1976, Alfred Harris was dispatched by his cab company to pick up two men near Goldie's Bar in Anchorage. Once inside the cab, the two men directed Harris to a secluded area and robbed him. They then drove Harris south of Anchorage where one of the men shot and wounded him.

Bresser and Springer were arrested in Kenai on December 17, 1976, pursuant to a warrant issued in connection with a liquor store robbery committed on November 24,

16 of the Constitution of Alaska.

1976; this robbery was unrelated to the Harris incident. Bresser denied any involvement in the liquor store robbery but gave a lengthy statement to the police regarding his participation in the Harris robbery and identified Springer as his accomplice and the man who fired the gun.

At the time of Springer's arrest, he was on parole for an armed robbery committed in the state of Minnesota. His parole supervision had been transferred to Alaska. While in custody following the arrest, Springer was served with several parole violation charges.[1] He was released from custody pending a meeting of the full parole board.

On January 10, 1977, Springer's parole officer was notified that Springer had left his employment. His cousin, with whom Springer had been living, had not seen him since January 6. On February 10, Springer and Bresser were indicted for the Harris robbery, and a bench warrant was issued for Springer. Bresser pled guilty to Count I of the indictment, and was sentenced on August 16, 1977.

Springer was arrested in Minnesota on March 28, 1977. The Minnesota authorities held him as a parole violator. Springer successfully fought extradition to Alaska for one and one-half years.

He was finally transported to Alaska on December 7, 1978, and was arraigned the next day. The public defender agency was appointed to represent him. An omnibus hearing was set for January 12, 1979, and trial was set for March 5, 1979.

On December 12, 1978, an attorney from the public defender agency moved to withdraw because the agency had represented Bresser and claimed there would be a conflict of interest if it were forced to represent Springer. The public defender agency was permitted to withdraw, and William L. Choquette was appointed counsel for Springer. Choquette moved to continue the date of the omnibus hearing from January 12, 1979, to February 16, 1979, but he did

not request that the trial date be changed. This motion was granted.

On February 6, 1979, Choquette moved to withdraw as Springer's counsel since Springer had expressed a lack of confidence in Choquette's abilities to represent him, due to Choquette's workload. The public defender agency was again appointed. On February 15, 1979, the agency again moved to withdraw. The motion was granted the next day, February 16. Joseph Murray appeared later that day as Springer's newly appointed counsel; the omnibus hearing was set for March 28, 1979, and trial was set for the week of April 2, 1979.

On March 21, 1979, Murray moved to continue the omnibus hearing and the trial because of recently received "substantial quantities of discoverable materials." The omnibus hearing was reset for April 30, 1979, and the trial was set for June 18, 1979. Springer signed a limited waiver of his speedy trial rights for the period of April 2 through June 18, 1979.

On May 31, 1979, Springer wrote to Judge Moody requesting that he be allowed to change counsel. Apparently no omnibus hearing had yet been held. Judge Moody set the matter for hearing on June 8, 1979, but that hearing was continued due to the illness of Murray's mother. At a hearing held on June 15, 1979, Springer indicated only that he wanted no more delays in the case. Murray remained Springer's counsel through trial, which commenced as scheduled on June 18. Springer was convicted of both counts.

## II. RULE 45 SPEEDY TRIAL RIGHTS

Springer claims his right to a speedy trial under Criminal Rule 45 was violated and therefore he should be released. Rule 45(b) provides:

> A defendant charged with a felony, a misdemeanor, or a violation shall be tried within 120 days from the time set forth in paragraph (c) of this rule.

---

1. Springer's parole officer was apparently unaware of the Harris robbery; the parole violation charges were based on the liquor store robbery and on the fact that Springer had left the Anchorage area without permission.

The time when the 120-day period begins to run is generally the date of arrest, arraignment, or indictment, whichever is first. Subsection (d) sets forth certain periods of delay which are to be excluded from computation of the 120 days. If the 120-day rule is violated, the defendant's remedy under subsection (g) is dismissal of the case with prejudice.

The Alaska Supreme Court has set out the following guidelines for applying Rule 45: Rule 45(d) is to be objectively applied in determining periods of excusable delay. *State v. Clouatre,* 516 P.2d 1189, 1191 (Alaska 1973). Expansive or narrow constructions of the rule's terminology are to be avoided. *Russell v. Anchorage,* 626 P.2d 586, 589 (Alaska App.1981). In calculating the 120 days in which the state is required to bring the defendant to trial, the date of events which starts the running of time periods will not be counted; the dates of tolling events will be counted. *State v. Fevos,* 617 P.2d 490, 492 n. 3 (Alaska 1980); *State v. Deacon,* 575 P.2d 1225, 1230 n. 12 (Alaska 1978).

Our view of the proper application of Rule 45 to Springer's case can be summarized as follows: The 120-day period began to run for Springer when he was arrested on December 17, 1976.[2] It was tolled after fifty-five days on February 10, 1977, when Springer was indicted and a bench warrant was issued for his arrest. It began to run again on December 8, 1978, when Springer was arraigned in Alaska. It was tolled again after 115 days on February 6, 1979, when Choquette moved to withdraw as Springer's counsel. It began to run again on February 14, 1979, when Choquette's motion to withdraw was granted and Judge Moody appointed the public defender to represent Springer for the second time. It was tolled for the final time after 116 days on February 16, 1979, when Murray made his first appearance as Springer's counsel and was granted a continuance. On March 22, 1979, Springer signed a formal waiver of his Rule 45 rights for the period between April 2, 1979, and June 18, 1979, when trial began.

Based upon these calculations, we conclude that only 116 days had elapsed for purposes of Rule 45. Therefore, the superior court's denial of Springer's motion to dismiss for violation of Criminal Rule 45 must be affirmed.

## III. CONSTITUTIONAL SPEEDY TRIAL RIGHTS

Springer also argues that even if his right to a speedy trial was not violated under Rule 45, it was denied under the United States and Alaska constitutions. The Alaska Supreme Court has noted that even where the objective standards of Rule 45 have been met, the delay might still have prejudiced the defendant to the extent that his constitutional speedy trial rights were violated. *Deacon v. State,* 575 P.2d 1225, 1229 (Alaska 1978).

Springer's sole argument on this issue is that he is entitled to a presumption of prejudice because more than fourteen months passed between his arrest and trial. He made no specific allegations of prejudice in either his points on appeal or his brief. Therefore, the court's inquiry is limited to the narrow question of whether Springer is entitled to the presumption of prejudice.

In *Rutherford v. State,* 486 P.2d 946, 951–52 (Alaska 1971), the supreme court held that it would presume prejudice where the delay between charge and trial was fourteen months. *See also Tarnef v. State,* 492 P.2d 109, 112 (Alaska 1971) (*Tarnef I*) ("it is not without significance that in each case where we have attached a presumption of prejudice from a delay in trial, that delay

---

**2.** The parties have apparently agreed, and the court accordingly assumes, that the Rule 45 calculations in this case commence with Springer's December 17, 1976, arrest for an unrelated liquor store robbery. To the extent that the court has concluded that no Rule 45 violation has occurred, even when the 120 day calculations utilize the December 17, 1976 arrest date, it follows that the court would also reach the same conclusion if the February 10, 1977, date of Springer's indictment for the Harris incident were utilized for Rule 45 calculation purposes.

has exceeded fourteen months"). Absent such a presumption, the defendant must bear the burden of showing prejudice. *Id.* at 113.

In *Tarnef v. State,* 512 P.2d 923, 933 (Alaska 1973) (*Tarnef II*), the supreme court excluded periods of delay caused by the defendant in calculating whether the defendant was entitled to the presumption of prejudice. Applying the principles of *Tarnef II* to the thirty months that passed between Springer's arrest and his trial, eighteen months are excluded for the time Springer fought extradition and four months are excluded for the continuances requested by Springer after Murray was appointed to represent him on February 16, 1979. Only eight months of the thirty-month delay were not "caused" by Springer. As pointed out by the state, this is approximately the same delay as in *Tarnef I,* where the court held the defendant was not entitled to the presumption of prejudice.

Since Springer is not entitled to a presumption that the delay between his arrest and trial prejudiced his case and since he made no specific allegations of prejudice on which this court may rule, Springer's case cannot be dismissed on this basis.

## IV. EFFECTIVE ASSISTANCE OF COUNSEL

Springer argues that he is entitled to a new trial because he was denied the effective assistance of counsel at his first trial.[3] He bases this claim on trial counsel's failure to adequately research and investigate the case, failure to advise Springer of his rights, failure to make arguments essential to Springer's defense, and general incompetence due to trial counsel's personal problems. For the reasons set out below, we find these arguments without merit.

In *Risher v. State,* 523 P.2d 421 (Alaska 1974), the Alaska Supreme Court adopted the following standard for effective assistance of counsel:

Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Id.* at 424. The court in *Risher* also imposed upon the defendant the burden of showing that trial counsel's incompetence was prejudicial to the outcome of the case.

In effect, we are promulgating a two-pronged test. Before reversal will result, there must first be a finding that counsel's conduct either generally throughout the trial or in one or more specific instances did not conform to the standard of competence which we have enunciated. Secondly, there must be a showing that the lack of competency contributed to the conviction. If the first burden has been met, all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome.

*Id.* at 425. Accordingly, for this appeal to succeed, Springer must not only show that his attorney, Murray, acted below the standard of competence, he must also create a reasonable doubt that he would not have been convicted but for the incompetence.

1) *Failure to investigate and research.*

■ Springer argues that Murray's investigation and research of the case was inadequate for several reasons. First, he claims that Murray did not sufficiently look into the issue of Springer's speedy trial rights. Without deciding whether Murray's research in this area met the standard of competence, we must reject this argument because Springer failed to show that any incompetence on Murray's part contributed to the conviction. Since, as discussed above, Springer's speedy trial rights were not violated, greater competence on Murray's part would not have affected the outcome of the case as required by *Risher.*

---

**3.** Effective assistance of counsel is guaranteed by the sixth amendment to the United States Constitution and article I, § II of the Alaska Constitution. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

■ Springer also claims that Murray's failure to attempt to introduce the results of a polygraph test, which Springer took in Minnesota, into evidence amounted to incompetence. In his own brief, however, Springer acknowledges that under *Pulakis v. State*, 476 P.2d 474 (Alaska 1970), the results of polygraph tests are considered scientifically unreliable and therefore inadmissible. Despite Springer's claim that there is a "judicial trend toward allowing polygraph evidence into trial," we cannot say that Murray's failure to attempt to introduce such evidence falls below the minimal standard of competence set out in *Risher*.

■ Springer also asserts that Murray's failure to hire an investigator to locate a certain alibi witness amounted to incompetence. However, there is nothing in the record to indicate that this was prejudicial to the outcome of the case. Springer's affidavit in support of his motion for post-conviction relief indicates that the only information Springer possessed concerning an alibi witness was that her name was Lisa and she was with him on the night of the robbery. Given the lack of other information about Lisa, we cannot say that Murray's failure to pursue this line of defense amounted to incompetence. This conclusion is bolstered by the fact that an investigator hired upon Judge Ripley's authorization at Springer's post-conviction relief hearing apparently failed to turn up the alibi witness.

■ Springer also claims that Murray failed to interview prosecution witnesses before trial and that consequently, his cross-examination of these witnesses was inadequate. The record does not support this assertion. Murray did cross-examine the prosecution witnesses extensively and Springer has made no specific showing of prejudice resulting from the alleged incompetence. The supreme court stated in *Risher*:

> We are not condoning the second-guessing of trial counsel in making the myriad decisions encountered in a criminal trial, for it is a truism that hindsight furnishes 20–20 vision. All that is required of

counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions.

523 P.2d at 424. Springer has failed to show that Murray's failure to interview witnesses was not within this "range of reasonable actions."

Springer also argues that Murray should have investigated the claim that Springer was illegally extradited to Alaska from Minnesota. Again, regardless of whether this decision amounted to incompetence, Springer has failed to show how this action affected the outcome of the case. In the absence of such an indication on the record, we cannot agree that the failure to investigate was prejudicial.

2) *Failure to advise Springer of his rights.*

■ Springer claims that Murray not only failed to properly inform him of his right to change counsel, but that he threatened to testify against Springer if Springer sought to remove him. While we recognize that this kind of incompetence might not be evident in the transcript of the trial, Springer did raise the issue in his affidavit in support of his motion for post-conviction relief. He also received a hearing before Judge Moody on this issue on June 15, 1979, as the result of the letter he wrote to the court. At this hearing he chose to remain silent regarding the complaints against Murray. Accordingly there is nothing in either record to support Springer's claim.

Springer cites *Thompson v. State*, 412 P.2d 628 (Alaska 1966), in support of the assertion that remand is required for a hearing to determine if the allegations against trial counsel are true. *Thompson* is distinguishable, however, because in that case the defendant was denied *any* opportunity for a hearing to air his complaints against his attorney. *Id.* at 635–36. Here, however, Springer *had* an opportunity to bring Murray's alleged threats to the attention of the court but chose not to do so. His silence at the hearing before Judge

Moody makes it impossible to conclude that Springer's allegations against Murray have any merit.

3) *Murray's personal problems.*

 Springer argues that the illness of Murray's mother prior to trial and the termination of his law practice shortly after trial make it likely that Murray's representation of Springer was impaired by personal problems. However, he makes no specific allegations of prejudice resulting from Murray's problems. In the absence of such a showing, we cannot assume that trial counsel's personal problems necessarily imply that his assistance was incompetent or ineffective. Accordingly, we must reject this argument.

We conclude that Springer was not denied the effective assistance of counsel because he failed to show both incompetence of counsel and a reasonable possibility of prejudice as required by *Risher.*[4]

## V. EQUAL PROTECTION

 Finally, Springer argues that the method of appointing counsel for indigent defendants when the public defender agency claims a conflict violates the equal protection clause. He reasons that since the right to counsel is a fundamental right under *Gideon v. Wainwright,* 372 U.S. 335, 340–45, 83 S.Ct. 792, 794–797, 9 L.Ed.2d 799, 802–06 (1963), the state must show a compelling state interest for treating members of the same class—indigent defendants— differently. Springer uses a statistical argument to show that those members of the class who were represented by the public defender received lower sentences than those represented by appointed counsel. He argues that the State of Alaska cannot show a compelling state interest that justifies the disparate treatment.

The flaw in Springer's argument is his formulation of the nature of the right to counsel under the sixth amendment. The right, as stated in *State v. Risher,* 523 P.2d 421, 424 (Alaska 1974), is to the effective assistance of counsel. As the court noted in *Risher,* there is a broad spectrum of competency even within the range of practitioners skilled in the criminal law. There is nothing in the sixth amendment that entitles all indigent defendants to the same level of representation. As stated by the court in

4. Our holding that Springer was not denied effective assistance of counsel, however, is dictated by the standard adopted in *Risher.* Because effective assistance of counsel is such a fundamental right, and because such effective assistance is a function of the training, experience and ability of trial counsel, Judge Bryner and I believe that it may be appropriate for the supreme court to re-examine the continued viability of the *Risher* standard. Under alternative standards suggested by other courts and commentators, Springer's claims might have merit. *See, e.g.,* Bazelon, *The Defective Assistance of Counsel,* 42 U.Cin.L.Rev. 1 (1973) (suggesting that once ineffective assistance of counsel has been shown by the defendant, burden should shift to the prosecution to prove that such ineffective assistance was harmless). *See also Cooper v. Fitzharris,* 586 F.2d 1325, 1334 (9th Cir.1978) (Hufstedler, J., dissenting) (urging adoption of rule that ineffective assistance of counsel automatically requires reversal), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); *Beasley v. United States,* 491 F.2d 687, 696–97 (6th Cir.1974) ("harmless error tests do not apply in regard to the deprivation of a procedural right so fundamental as the effective assistance of counsel"); *Coles v. Peyton,* 389 F.2d 224, 226–27 (4th Cir.) ("these omissions and failures satisfy us, *in the absence of affirmative proof of lack of prejudice,* that petitioner was denied effective assistance of counsel ...") (emphasis added), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968); and *Risher v. State,* 523 P.2d 421, 427 (Alaska 1974) (Rabinowitz, C.J., concurring) (acknowledging that Judge Bazelon presents "a cogent argument for relieving the defendant of the burden of showing prejudice" and indicating that the *Risher* standard should be critically examined "under adversarial testing"). The "adversarial testing" mentioned by Justice Rabinowitz in *Risher* has indicated that in every ineffective assistance of counsel case since *Risher,* the defendant has failed to meet the two prongs of the *Risher* standard. *See Dolchok v. State,* 639 P.2d 277 (Alaska 1982); *Nielsen v. State,* 623 P.2d 304 (Alaska 1981); *Coleman v. State,* 621 P.2d 869 (Alaska 1980); *Larson v. State,* 614 P.2d 776 (Alaska 1980); *Brown v. State,* 601 P.2d 221 (Alaska 1979); *Morgan v. State,* 582 P.2d 1017 (Alaska 1978); *Winkler v. State,* 580 P.2d 1167 (Alaska 1978); *Green v. State,* 579 P.2d 14 (Alaska 1978); *Morrison v. State,* 523 P.2d 427 (Alaska 1974); *Gaona v. State,* 630 P.2d 534 (Alaska App. 1981).

*McKinnon v. State,* 526 P.2d 18, 22 (Alaska 1974), "an indigent defendant is not entitled to representation by any particular attorney." Even if Springer could actually prove that indigent defendants who do not receive the services of the public defender agency consistently receive a lower quality of representation, the argument would lack merit unless the quality of representation fell below the *Risher* standard of minimal competence. The equal protection clause does not entitle Springer to a level of representation commensurate with that provided by the public defender agency and exceeding the constitutional level of competency. Since we have concluded that Springer was not denied the effective assistance of counsel under *Risher,* he lacks standing to raise this argument.[5]

In view of the foregoing conclusions, Springer's convictions are AFFIRMED.

SINGLETON, J., not participating.

---

**5.** Although we do not reach the equal protection issue, Judge Bryner and I believe that some guidelines should be established by the Alaska Supreme Court to assure the appointment of competent criminal trial counsel for indigent criminal defendants, whether such counsel come from the public defender agency or the private bar. *See, e.g.,* 1 ABA, *Standards for Criminal Justice* ch. 5–2.1—5–2.4 (1980), and the commentary to these standards. Under the present system in Anchorage, defendants who cannot receive the service of the public defender agency are generally assigned the services of one of two private law firms which, by contract, are required to have attorneys experienced and skilled in the area of criminal law. In cases of several levels of conflict, however, the potential still exists for the appointment of inexperienced or incompetent counsel. Thus, the need to formulate standards regarding competency and expertise in criminal law for appointed counsel remains.