Thomas ARNOLD, Appellant,

v.

STATE of Alaska, Appellee.

No. 6324/A-3.

Court of Appeals of Alaska.

July 20, 1984.

Jeffrey M. Feldman, Marcia Vandercook, Gilmore & Feldman, and Walter Share, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J. and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Thomas Arnold pled no contest to and was convicted of one count of manslaughter, AS 11.41.120(a)(1), and three counts of assault in the second degree, former AS 11.41.210(a)(3). He received a seven-year sentence for manslaughter and three concurrent five-year sentences for the assaults. He subsequently moved for permission to withdraw his plea based on a claim of ineffective assistance of counsel. *See* Alaska R.Crim.P. 35(c). The trial court denied the motion and Arnold appeals. The state concedes error, agrees that Arnold received ineffective assistance of counsel, and recommends that he should be allowed to withdraw his plea. After carefully reviewing the record we agree and reverse. *See Marks v. State*, 496 P.2d 66, 67–68 (Alaska 1972) (where state confesses error the court must nevertheless review the

record to insure that reversal is warranted).

## FACTS

An indictment returned on March 20, 1981, alleged in substance that on October 31, 1980, Thomas Arnold drove his brother's pickup truck on Tudor Road in Anchorage at a high rate of speed without headlights. Arnold had apparently been drinking. Arnold's vehicle crossed into the left-hand turn lane and collided head-on with another vehicle that was waiting to turn. A fifteen-year-old girl in the second vehicle was killed on impact; Arnold, his brother Timothy, and three other persons in the second vehicle were seriously injured. Two persons in a third vehicle were also injured when Arnold's truck struck their vehicle after the initial impact.

Shortly after the accident, Arnold's parents spoke with Joseph Vittone, an Anchorage attorney. Vittone visited Arnold and his parents at the hospital and talked to them about the accident. Subsequently, over a period of several weeks, Vittone talked about the case with an attorney representing Arnold's insurance carrier, as well as insurance adjusters and attorneys representing the victims. He maintained contact with the Arnolds who had returned to Ohio after their sons were released from the hospital.

Vittone was absent from his office during the month of December, 1980. During that time his law partner continued to talk to representatives of the insurance company on Arnold's behalf and obtained copies of the accident and police reports that had been completed by that time. Copies of the reports were sent to the Arnolds and Vittone's partner had several telephone conversations with Mrs. Arnold regarding the possibility of future civil and criminal actions.

On January 20, 1981, Mrs. Arnold wrote to the firm, stating:

Thank you for all you have done in our behalf. I do feel, however, that in light of the present status quo that your services are no longer needed and I pray that they will not be needed in the future.

On January 29, 1981, Vittone wrote back, thanking Mrs. Arnold for her letter and stating:

Mr. Norsworthy [counsel for Timothy's insurance company] may be able to keep you informed as to what is going on up here. To the best of my knowledge no criminal charges have been filed against Tom at this time and hopefully none will.

In April of 1981, following his indictment, Arnold was arrested in Ohio. After Thomas's arrest, Mrs. Arnold called Mr. Vittone and told him that her son wanted to return to Alaska "to plead guilty as soon as possible." Vittone contacted the Alaska State Troopers and Ohio authorities and arranged to have Arnold released from custody in Ohio and transported to Alaska so that he could turn himself in on the warrant. Arnold was arraigned on May 22, and entered a plea of not guilty at Vittone's suggestion.

On June 3, 1981, Arnold, accompanied by Mr. Vittone, appeared in superior court before Judge Ripley and entered pleas of no contest to the manslaughter charge and three counts of assault. Another assault count was dismissed.

Judge Ripley sentenced Arnold to concurrent terms of seven years on the manslaughter charge and five years on each of the assault convictions. On October 20, 1981, Arnold moved for post-conviction relief and to withdraw his plea on the ground of ineffective assistance of counsel. Judge Ripley denied both motions on April 15, 1983.

On appeal, Arnold contends that his counsel provided him ineffective assistance in the following ways:

Failure to request or review the extensive police and investigative reports;

Failure to request or review the testimony presented to the grand jury;

Failure to determine whether *prima facie* evidence of manslaughter had been presented to the grand jury or even existed;

Failure to interview any witnesses including eyewitnesses, medical personnel, and police officers;

Failure to make any pretrial motions or explain to the defendant his right to make pretrial motions challenging the indictment or seeking suppression of evidence;

Failure to investigate critical facts including the manner of operation of the defendant's vehicle, the defendant's alleged level of intoxication, and the victim's level of intoxication;

Failure to know the elements of manslaughter;

Failure to know the lesser-included offenses of manslaughter;

Failure to examine the evidence to determine whether it better fit manslaughter or one of the lesser-included offenses;

Failure to review with the defendant his defenses and the weaknesses of the state's case;

Failure to advise the defendant of his right to present sworn testimony at sentencing;

Failure to disclose the presentence report to the defendant and to permit the defendant to review, comment on, or correct the report;

Failure to disclose that he was not skilled in criminal law and had never previously handled a criminal case of any kind or a civil jury trial.

## DISCUSSION

■■■ Alaska has developed a two-pronged test for determining the adequacy of representation in a criminal case. The test requires consideration of both the attorney's performance and the prejudice resulting from any deficiency in that performance. Defense counsel's performance is judged against the competence that would be displayed by "a lawyer with ordinary training and skill in the criminal law."

*See Risher v. State*, 523 P.2d 421, 424 (Alaska 1974). If the defendant can demonstrate by a preponderance of the evidence that defense counsel's actions fell below that standard either generally or in one or more specific instances, he must then show that his attorney's failings contributed to his conviction. *Nielsen v. State*, 623 P.2d 304, 308 (Alaska 1981); *Risher v. State*, 523 P.2d at 425; *Springer v. State*, 666 P.2d 431, 435–37 (Alaska App. 1983); *Bangs v. State*, 663 P.2d 981, 986 (Alaska App.1983).[1]

In *Coleman v. State*, 621 P.2d 869 (Alaska 1980), *cert. denied*, 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981), the court stated:

The requirement is one of minimal competency within the wide range of reasonable performance which may be expected of a skilled attorney in the course of a trial, not a prohibition against all mistakes and errors in judgment:

Lawyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill in the criminal law. It is only when the ability is below the nadir of that range that we hold it to constitute a deprivation of effective assistance of counsel. We are not condoning the second-guessing of trial counsel in making the myriad decisions encountered in a criminal trial, for it is a truism that hindsight furnishes 20–20 vision. All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions.

621 P.2d at 879 (quoting *Risher v. State*, 523 P.2d at 424).

---

1. This two-part test is based upon federal law. *See, e.g., Beasley v. United States*, 491 F.2d 687 (6th Cir.1974); *Moore v. United States*, 432 F.2d 730 (3d Cir.1970). It is essentially the same as the negligence test for determining attorney malpractice in civil cases. Until now, no Alaska defendant has ever met both prongs of this test and secured a new trial based on ineffective assistance of counsel. *See Springer v. State*, 666 P.2d at 437 n. 4.

■ In this case we are concerned with the representation Vittone furnished Arnold in connection with Arnold's decision to plead no contest. It is well established that a defendant in a criminal case is entitled to the effective assistance of counsel in making the decision to plead guilty or no contest to the charges against him. In order to render "effective assistance" during a plea, counsel must be familiar with the facts of the case and the applicable law so that he can fully advise the defendant of the options available to him. If a defendant does not receive reasonably effective assistance of counsel in connection with a decision to plead, the plea cannot be constitutionally valid. *See* ABA Standards Relating to The Defense Function § 4.1 and commentary at 224–28 (Approved Draft 1971). *See also Diaz v. Martin,* 718 F.2d 1372, 1378 (5th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2358, 80 L.Ed.2d 830 (1984); *Scott v. Wainwright,* 698 F.2d 427, 429 (11th Cir.1983); *Tinlin v. Parratt,* 680 F.2d 48, 50 (8th Cir.1982); *Hawkman v. Parratt,* 661 F.2d 1161, 1168–69 (8th Cir. 1981); *Via v. Superintendent, Powhatan Correctional Center,* 643 F.2d 167, 171 (4th Cir.1981); *State v. Cameron,* 30 Wash. App. 229, 633 P.2d 901, 904 (1981).

The commentary to ABA Defense Standard § 4.1 at 226–27 is particularly helpful:

> The lawyer's duty to investigate is not discharged by the accused's admission of guilt to him or by his stated desire to enter a guilty plea. The accused's belief that he is guilty in fact may often not coincide with the elements which must be proved in order to establish guilt in law. In many criminal cases the real issue is not whether the defendant performed the act in question but whether he had the requisite intent and capacity. The accused may not be aware of the significance of facts relevant to his intent in determining his criminal liability or responsibility .... The basis for evaluation of these possibilities is the lawyer's factual investigation for which the accused's own conclusions are not a substitute.

> The lawyer's duty is to determine, from knowledge of all the facts and applicable law, whether the prosecution can establish guilt *in law,* not in some moral sense. An accused may feel a sense of guilt but his subjective or emotional evaluation is not relevant; an essential function of the advocate is to make a detached professional appraisal independent of a client's belief either that he is or is not guilty.

In *Winkler v. State,* 580 P.2d 1167, 1173 (Alaska 1978), the Alaska Supreme Court rejected the defendant's contention that he had been denied effective assistance of counsel in making the decision to enter a guilty plea because the court concluded that there was no specific evidence of either the attorney's failure to investigate possible defenses or to otherwise advise the defendant of the consequences of his plea. In the instant case, Judge Ripley made the following finding in regard to this aspect of Vittone's representation:

> *Failure to Research and Analyze the Law.* Mr. Vittone states that he and his associates gave thought to the applicable law, including Criminally Negligent Homicide .... That an analysis of lesser-included offenses was accomplished and shared with the Defendant is borne out by his remarks prepared for sentencing, ... where he states he feels the charge should be "unvoluntary." To the Court this statement indicates a familiarity with a variation of the charge which could only have come from conferences with counsel. Even though Mr. Vittone portrayed as considerably less than a professor of the law of homicide while testifying, it is clear that the statutes were addressed, and he concluded that the State could prove Manslaughter. The charges, while extremely serious, are not complex in their statutory elements. The record on analysis of the fact and law is sufficient to meet the *Risher* standard.

We disagree. We conclude that Judge Ripley's factual findings in this respect are clearly erroneous. The evidence at the

post-conviction relief hearing establishes as a matter of law that Arnold received ineffective assistance of counsel in making his decision to plead to the charges in the indictment. Mr. Vittone's own testimony established that he had minimal knowledge of the facts of Arnold's case. He did not review the police reports (other than the initial accident report obtained by his partner), the grand jury testimony or the medical and blood-alcohol reports. Nor did he interview any witnesses. Mr. Vittone's testimony also establishes that he did not understand the applicable law. He apparently believed that his client was guilty of manslaughter because, "there was an accident whether he was drunk or sober." Vittone did not believe that whether Arnold's headlights were on or off at the time of the accident was an important factor in evaluating the manslaughter charge or possible lesser-included offenses. Vittone was apparently unaware of any distinction between the elements of negligent homicide and manslaughter. Vittone did not research any legal issues other than sentencing; he apparently concluded and advised Arnold that he could expect a sentence of not more than one or two years with most of it suspended.

In *Winkler*, the court held that the defendant's surprise as to the severity of his sentence was not enough to establish ineffective assistance of counsel "without a clear showing of unprofessional conduct." 580 P.2d at 1172 (quoting *United States v. Parrino*, 212 F.2d 919, 921 (2d Cir.1954)).

In the instant case, Mr. Vittone underestimated his client's potential exposure to possible sentences on the manslaughter charge. Given Vittone's lack of experience in criminal cases and his failure to investigate the facts, obtain discovery and research the law, his misjudgment is understandable. Under the circumstances, however, the only conclusion that a reasonable person could draw was that Arnold could not make an informed choice about pleading no contest based upon the advice he received from Mr. Vittone.

■ Judge Ripley did find, and the finding is supported by substantial evidence, that Vittone was privately retained by Arnold's parents and that they were very concerned about the costs of litigation. Understandably, Mr. Vittone felt constrained in investigating the facts and researching the law by his client's expressed unwillingness to pay. Vittone recommended a public defender and the Arnolds refused. Vittone certainly would have been justified in declining to represent Arnold under the circumstances. Nevertheless, he continued to represent Arnold. Vittone was also undoubtedly influenced by Arnold's frequent expression of moral responsibility for the accident and his desire to purge himself of shame and guilt by confessing. However, a client's lack of financial resources and despair about the outcome does not free an attorney who has agreed to represent a client from the obligation to provide adequate representation.[2]

---

2. We sympathize with the plight of an attorney faced with a client who wants to plead guilty and resists paying for an adequate investigation, but we also agree with the comments of the court in *McLaughlin v. Royster*, 346 F.Supp. 297, 300–01 (E.D.Va.1972):

> The constitutional requirement is not satisfied upon a perfunctory appearance by counsel who does nothing whatever before or during trial to advise a client or to protect his rights except to acquiesce with the client's wishes. Perfunctory or hand-holding representation is simply not consistent with the right to counsel. A client's professed desire to plead guilty is not the end of an attorney's responsibility. When a defendant convicts himself in open court the Constitution recognizes that the critical stage of adjudication has proceeded for

the most part outside the courtroom. That process contemplates the pursuit by counsel of factual and legal theories in order to reach a conclusion as to whether a contest would best serve the attorney's client's interest .... It is not fatal to petitioner's claim that he may, indeed did, insist to his counsel that he wished only to plead guilty in exchange for a life sentence. The mere securing of the sought after bargain does not fulfill counsel's duty in such a case, for to so rule would be to reduce the role contemplated by the Constitution to that of a messenger, and to cast the responsibility for the fairness of the entire proceeding upon the individual defendant who the law recognizes is most in need of assistance.

As the court said in *Herring v. Estelle,* 491 F.2d 125, 128 (5th Cir.1974):

> Reasonably effective assistance is an easier standard to meet in the context of a guilty plea than in a trial, but counsel still must render competent service. It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an "understanding of the law in relation to the facts." The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. In other words, if the quality of counsel's service falls below a certain minimum level, the client's guilty plea cannot be knowing and voluntary because it will not represent an informed choice. And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required minimum level. [Citations omitted; footnote omitted.]

■ Had Vittone fully understood the facts and the applicable law, he may still have advised Arnold to plead no contest. He may not have found anything in the police reports that would have enabled him to challenge the indictment or obtain a more favorable disposition. Indeed, had he looked at the reports and listened to the grand jury testimony, he might have concluded that his client's decision to plead no contest was the only realistic course of action. The point is that Vittone was obligated to do more than he did regardless of the outcome. Without a fuller understanding of the facts and law, Vittone could not meaningfully advise Arnold regarding the case against him. Without such meaningful advice, Arnold could not give an informed consent to a plea of no contest. Consequently, we conclude that the two prongs of the *Risher* test are satisfied. The first prong, ineffective performance, is established by Vittone's failure to adequately inform himself regarding the relevant facts and the law. Arnold's resulting inability to knowingly and intelligently evaluate his situation and enter an informed plea establishes prejudice and therefore satisfies the second prong.

The Alaska standard is one of minimal competency within the wide range of reasonable performance which can be expected of lawyers with reasonable training and skill in the criminal law. On this record we must agree with Arnold and with the state that Arnold was denied effective representation.

The judgment of the superior court is REVERSED. The case is REMANDED to the superior court to permit Arnold to withdraw his plea of no contest and proceed to trial.