Russell L. SHETTERS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1283.

Court of Appeals of Alaska.

March 11, 1988.

spect the trial court's determination as to the effect this evidence would have on the jury.

Charlene A. Lichtmann, Anchorage, for appellant.

David Mannheimer, Chief Asst. Atty. Gen., Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Russell L. Shetters pled no contest and was convicted of burglary in the first degree, a class B felony. AS 11.46.300(a)(1). Superior Court Judge Karl S. Johnstone sentenced Shetters to five years' imprisonment with eighteen months suspended.

Shetters appeals, raising essentially three issues. First, he contends that Judge Johnstone erred in denying his motion to set aside his plea. Second, he argues that Superior Court Judge Mark C. Rowland erred in denying his petition for post-conviction relief. *See* Former Alaska Rule of Criminal Procedure 35(c). Finally, he contends that his sentence is excessive. We affirm.

## FACTS

During the winter and early spring of 1985, Bob Ross, a general contractor, was constructing a home on Monastery Road in Eagle River for Mr. and Mrs. Fred Arvidson. On March 22, 1985, the house was virtually complete. Ross indicated that all of the locks had been installed, that the plumbing and electricity were functioning, and that only finish carpentry and installation of some sinks and toilets were necessary before the Arvidsons could move in. The Arvidsons had already moved some of their personal property into the house. Among the items of personal property present on the premises were two Franklin computers, a box full of dishes, and a box full of women's sweaters.

Harley Mark Cranor, who lives near the Arvidsons' new home on Monestary Road,

testified before the grand jury that on March 22, 1985, at approximately 11:00 p.m., he was alerted by a loud vehicle going past his home. Cranor testified that he was familiar with all the vehicles normally in the area and was convinced that vehicle did not belong there. He was particularly alarmed when he saw the vehicle douse its lights as it approached the cul-de-sac at the end of the street. Cranor asked his wife to call some neighbors for assistance and went out to investigate. Danny Kendall responded and, at Cranor's suggestion, blocked the exit from the cul-de-sac with his vehicle. Kendall remained with his vehicle while Cranor returned to his home to call the police and Bob Ross, who immediately came to the scene.

When Ross, Cranor, and Kendall approached the Arvidsons' new home, they saw two young men and a young woman exit the garage carrying property. When the individuals saw Cranor and his companions, they put the property back inside the garage. The three individuals, subsequently identified as M.S., a juvenile, Jeffrey Wyatt, and Russell Shetters indicated that Wyatt had been working on the premises, had left some tools behind, and that the three had come to retrieve those tools. The police arrived and, shortly thereafter, a fourth individual, Michelle Wyatt, came out of the woods. She said that she had repaired there because she could not find a working bathroom in the house.

### PROCEEDINGS

M.S. testified before the grand jury. Essentially, she indicated that she, Michelle Wyatt, Jeffrey Wyatt, and her boyfriend, Russell Shetters, had gone to the Arvidson residence to retrieve Wyatt's tools. She said that Wyatt had shown them the house, and while there, they discovered the two computers and some other personal property. Wyatt demanded that Shetters and the others assist him in taking the property and threatened to deny them a ride home unless they cooperated. They had started to remove the property from the premises when they were discovered by the Arvidsons' neighbors. Statements by Wyatt and Shetters were also presented to the grand jury in which the two denied any criminal activity, and indicated that they had merely come to the premises at 11:00 p.m. in order to retrieve Wyatt's tools. The grand jury returned an indictment charging Shetters with burglary in the first degree and attempted theft.

Prior to Shetters' indictment, counsel from the Public Defender Agency had been appointed to represent him. The defense attorney began negotiations with the district attorney's office for a possible resolution of the case and suggested that Shetters would plead to criminal trespass. The state responded that it would accept a plea to burglary in the second degree, a class C felony. Shetters initially agreed to this disposition and then changed his mind, at which point the state obtained an indictment from the grand jury. After Shetters was indicted, his case was reassigned to another attorney in the Public Defender Agency. The newly appointed counsel indicated an intent to attack the indictment on the ground that the state had failed to present exculpatory evidence. It appears that latent fingerprints were found on the items allegedly carried from the residence by Wyatt and Shetters, but that when tested, those fingerprints did not match either Wyatt or Shetters. The following transpired at the grand jury proceeding.

JUROR: You don't have any testimony regarding the fingerprints yet?

PROSECUTOR: We have all the—those are all the witnesses we intend to call now. If during the deliberations you want to find out if there was any fingerprints on the items we can attempt to contact the lab technician and call him for his testimony. We'll be happy to do that for you but I think collectively you should decide whether you want that additional evidence.

JUROR: Okay.

The grand jury apparently did not request further information regarding fingerprints. Defense counsel felt that the police report indicating that Shetters' fingerprints were not found on the items in question was itself admissible, and that the prosecu-

tor had misled the grand jury by indicating that it would be necessary to call an additional witness to testify. Counsel ultimately determined not to move to dismiss the indictment, however, because Shetters had not kept in touch with him and he was fearful that he could not produce Shetters at an omnibus hearing. The relationship between Shetters and counsel was strained, chiefly because Shetters distrusted public defenders and thought that they were allied with the state against him.

Shetters apparently showed up in his attorney's office for the first time on the day scheduled for trial. Shetters indicated a desire to plead no contest. Counsel discussed the case with Shetters and then informed the prosecutor and the court of Shetters' intent. A change of plea hearing was scheduled for the following day before Judge Johnstone. At the hearing, Judge Johnstone complied with Criminal Rule 11 in taking Shetters' plea. Significantly, the following transpired.

THE COURT: Do you [Russell L. Shetters] understand that if you have a previous felony conviction on your record, that there may be a minimum term that you would be subject to, and the court would have no discretion to go below that....

MR. SHETTERS: Yes, sir.

THE COURT: Do you understand that— first of all, is there any information that the state has of any prior convictions?

PROSECUTOR: Your Honor, I am aware of a 1983 conviction in Louisiana for breaking and entering. It is not clear at this time whether that would be a felony in the State of Alaska.

DEFENSE COUNSEL: We have researched that, Your Honor, and we believe that is a misdemeanor in this state. I've—although I have discussed that with Mr. Shetters, and he is aware that if there is different information that surfaces, that he would be subjected to presumptive sentencing. In that regard, Mr. Shetters and I went all—over all of the mitigating circumstances that would apply if he were subject to presumptive sentencing. I think he does understand the—what triggers presumptive sentencing, and how it works.

THE COURT: Mr. Shetters, if the breaking and entering offense that allegedly was committed by you turns out to be a felony, do you understand that you would be subject to presumptive sentencing?

MR. SHETTERS: Yes, sir.

THE COURT: And that there may be some mitigating factors which would reduce the presumptive sentence, but there also might be some aggravating factors that might increase the presumptive sentence. Do you understand that?

MR. SHETTERS: Yes, sir.

With Shetters' consent, sentencing was scheduled for October 11, 1985. On September 1, the state filed a notice, alleging that Shetters should be subject to presumptive sentencing. The state's allegation was based upon a prior conviction in the State of Arkansas. Shetters filed an objection to the use of presumptive sentencing. The trial court, however, initially concluded that the Arkansas breaking and entering conviction was a prior felony conviction for purposes of presumptive sentencing.

Shetters then moved to withdraw his plea, arguing, in essence, that the trial court's conclusion had come as a surprise and that he had no prior indication that he might be subject to presumptive sentencing. Shetters also indicated that he was dissatisfied with his plea because he felt that he had been overcharged and that he had been coerced by the prosecutor, through defense counsel, telling him how strong a case the state had against him. Judge Johnstone, relying on the dialogue set out in this opinion, found that Shetters was aware of the risk of presumptive sentencing. He noted that the issue was moot, however, because defense counsel was correct in that presumptive sentencing did not, in fact, apply to Shetters. Judge Johnstone thus concluded that there was no fair and just reason for withdrawal of the plea. Therefore, he denied Shetters'

motion. In denying the motion, Judge Johnstone also expressed concern that Shetters was attempting to manipulate the system.

A sentencing hearing was held. The trial court considered Shetters' substantial juvenile record, the fact that he had spent over sixteen months at McLaughlin Youth Center as a result of delinquency adjudications, and that he had apparently not benefitted at all from attempts at his rehabilitation. Judge Johnstone found Shetters to be dishonest and manipulative, and imposed a sentence of five years with eighteen months suspended.

## DISCUSSION

■ Shetters first argues that the trial court erred in denying his motion to withdraw his plea prior to sentencing. *See Knaub v. State*, 443 P.2d 44 (Alaska 1968), *cert. denied*, 393 U.S. 1039, 89 S.Ct. 661, 21 L.Ed.2d 586 (1969). He points out that in past cases, we have indicated that courts should be liberal in granting presentence requests for withdrawal of pleas. *Wahl v. State*, 691 P.2d 1048 (Alaska App.1984). Liberality does not require, however, that a plea be set aside for no reason at all. In the past, we have required a defendant to either show that he lacked effective legal advice, *Love v. State*, 630 P.2d 21, 25 (Alaska App.1981), or that his plea was involuntary or the product of a material mistake regarding the law or the facts. In *Wahl*, we permitted withdrawal when the defendant made a unilateral, but good-faith mistake regarding a sentence bargain. 691 P.2d at 1052.[1]

Perhaps, other good-faith reasons might suffice. We have not found, however, that the defendant's mere change of mind or reevaluation of his chances for a favorable

verdict to be sufficient even where the request to withdraw plea comes before sentencing and the state would suffer no prejudice if trial were held. *See McClain v. State*, 742 P.2d 269 (Alaska App.1987). We have carefully considered the record in this case and conclude that Judge Johnstone's decision that Shetters had not established a fair and just reason to withdraw his guilty plea was not clearly erroneous.

Shetters sought to withdraw his plea on the ground that he was surprised by the possibility that he would be subjected to presumptive sentencing. The record does not support Shetters' contention that he was surprised. In any event, he did not receive a presumptive sentence.

Shetters argues that there was a manifest breakdown in the attorney-client relationship. *See Love*, 630 P.2d at 25. The record indicates that Shetters did not keep in touch with counsel and that there may have been some acrimony between the two and some disagreement as to strategy and tactics. There was no evidence, however, that Shetters suffered any specific prejudice as a result. Moreover, Shetters argues that he was overcharged and pressured to plead. There is nothing in the record to suggest a finding that Shetters was under any greater pressure to enter a plea than other defendants faced with a trial that he believes will likely result in a guilty verdict. Shetters' plea was not involuntary.

■ Shetters next argues that his trial counsel rendered him ineffective assistance of counsel. *See Risher v. State*, 523 P.2d 421 (Alaska 1974). He makes three related claims. First, he contends that trial counsel failed to file a motion to dismiss the indictment based on the prosecution's fail-

1. In *Wahl*, we stressed that the defendant's reason for withdrawing his plea must be in good faith and not a mere rationalization. Reliance on reasons that are not genuine would not establish a fair and just reason for plea withdrawal. We did caution, however, that mere inconsistency between representations by the defendant at the entry of plea, and representations made in seeking withdrawal do not automatically establish that the defendant's reasons for seeking withdrawal are not genuine. The accuracy of the defendant's representations is a question of fact to be resolved by the trial judge. 691 P.2d at 1052 n. 5. Where a defendant's reasons for seeking withdrawal are not genuine or he is not proceeding in good faith, we have found "manipulation" and denied a withdrawal of plea even though it was made before sentencing and the state would not have been prejudiced if withdrawal had been granted. *Ningealook v. State*, 691 P.2d 1053, 1055–56 (Alaska App.1984).

ure to inform the grand jury that the latent prints found on the personal property which Shetters allegedly attempted to steal did not match Shetters' prints. In order to succeed on this claim, Shetters must establish that a motion to dismiss the indictment, if made, would have been granted and, if granted, would have prevented reindictment. *See Wilson v. State,* 711 P.2d 547 (Alaska App.1985). Judge Rowland concluded that such a motion would not have been successful had it been made. This conclusion is not clearly erroneous.

■ Second, Shetters argues that trial counsel failed to investigate the defense of privilege. Essentially, Shetters argues that the defense of reasonable mistake as to privilege did not occur to Shetters' trial counsel before he advised Shetters to change his plea. In Shetters' view, trial counsel did not investigate all the applicable law to determine whether the prosecution could establish guilt.

It is not clear, however, what Shetters would have had counsel do. Counsel was apparently aware of the grand jury testimony and the police reports. He was aware of Shetters' contention, and the contentions of his accomplices, that they had gone to the Arvidson residence at 11:00 p.m. to help Shetters' friend, Wyatt, retrieve some tools. Defense counsel was convinced that a jury would not accept that explanation. He was particularly concerned that Shetters would make a bad witness on his own behalf and, if he testified, would be impeached by evidence of prior theft offenses. Under the circumstances, trial counsel's consideration and

rejection of a "privilege defense" was not ineffective assistance of counsel. *See Larson v. State,* 614 P.2d 776, 780 (Alaska 1980) (without deciding whether jury might have accepted a diminished-capacity defense, outlook for an acquittal or a conviction on lesser offense was so improbable that counsel's failure to fully explain the elements of this defense to defendant would not render his legal assistance ineffective.) [2]

■ Third, Shetters argues that his trial counsel failed to investigate a legal defense to the charge of burglary in the first degree based upon the contention that a residence in the process of construction does not become a dwelling until its owners move in. *See James v. United States,* 238 F.2d 681, 683 (9th Cir.1956). Trial counsel indicated that he had investigated that defense and was prepared to argue it had the case gone to trial. He lacked confidence in the defense, however, and therefore did not discourage Shetters from entering a plea of no contest.

There is authority supporting the proposition that a home in the process of construction is not a "dwelling." *See, e.g., Melton v. State,* 477 So.2d 942 (Miss.1985); *Watson v. State,* 254 Miss. 82, 179 So.2d 826 (1965). On the other hand, there are cases to the contrary. *See, e.g.,* Annotation: *Occupant's Absence from Residential Structure as Affecting Nature of Offense as Burglary or Breaking and Entering,* 20 A.L.R. 4th 349, 377–79 (1983).

Alaska Statute 11.81.900(b)(17) defines dwelling as "a building that is designed for

---

**2.** On appeal, Shetters argues that a variation of the privilege defense could have been presented without calling Shetters as a witness. Under this theory, Shetters could have used the testimony of M.S. to establish that he did not form an intent to steal until after he entered the premises and saw the Arvidsons' property. This defense would concede theft, but dispute burglary. This approach to the issue apparently did not occur to defense counsel. Judge Rowland rejected this contention on the mistaken belief that a person "remains unlawfully on premises" if he steals property while there regardless of when he formed the intent to steal. In *Arabie v. State,* 699 P.2d 890, 894–95 (Alaska App.1985), we interpreted the "remain unlawfully" lan-

guage to apply only when a defendant enters premises lawfully but remains after his privilege to be present ceases with the intent to commit a crime, *e.g.,* by secreting himself in a department store until after closing time in order to steal. If Shetters did not have an intent to steal at the time his presence on the premises first became unlawful, he could not be convicted of burglary. The intent to commit a further crime must co-exist with the initial criminal trespass as applied to the facts of this case. We are satisfied that this argument is so subtle, and the likelihood that a jury would accept it so remote, that counsel was not ineffective for failing to discover and pursue it. *Larson,* 614 P.2d at 780.

use or is used as a person's permanent or temporary home or place of lodging." In *Shoemaker v. State*, 716 P.2d 391 (Alaska App.1986), we held that a fishing boat designed and equipped to sleep two crew members during the fishing season was a "dwelling," even though it was not being used for that purpose at the time of the defendant's entry. We noted that the statutory definition extends not only to buildings being used as a person's permanent or temporary home or place of lodging, but also to those designed for such use. A jury might have found that the Arvidsons' home, given its state of completion, met this test. Trial counsel did not render Shetters ineffective assistance by failing to explore this issue further than he did. *Larson*, 614 P.2d at 780–81.

Shetters' reliance on *Arnold v. State*, 685 P.2d 1261 (Alaska App.1984), is misplaced. In *Arnold*, the state conceded error, and urged reversal on the basis of ineffective assistance. After independently reviewing the record, we agreed and reversed. Arnold, while intoxicated, drove a pickup truck at a high rate of speed without headlights. After crossing into the left-hand turn lane, he collided head-on with another vehicle proceeding in its proper lane of traffic. One passenger in the other vehicle was killed. Arnold's conduct occupied the borderland between negligent homicide and manslaughter. His retained attorney, unfamiliar with the criminal law and unaware of the distinction between the two offenses, permitted Arnold to plead no contest without reading the police reports, investigating the facts, or researching the law. We concluded that without a fuller understanding of the facts and the law, trial counsel could not meaningfully advise Arnold regarding the case against him. Without meaningful advice, Arnold could not give an informed consent to a plea of no contest. 685 P.2d at 1267.

In contrast, the state did not concede error in this case. Shetters' trial counsel had over six years' felony trial experience. His familiarity with the facts and the law in this case was well within the competence that would be displayed by "a lawyer with ordinary training and skill in the criminal law." *Risher*, 523 P.2d at 424. It is important to stress that the test does not require a high level of skill or performance. As the supreme court pointed out in *Coleman v. State*, 621 P.2d 869, 879 (Alaska 1980), *cert. denied*, 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981): "The requirement is one of minimal competency within the wide range of reasonable performance which may be expected of a skilled attorney in the course of a trial, not a prohibition against all mistakes and errors in judgment."

■ Finally, Shetters argues that his sentence is excessive. He was convicted of a class B felony. The maximum penalty is ten years' imprisonment. Presumptive terms are four years for a second felony offender and six years for a third felony offender. AS 12.55.125(d). It is not necessary to set out in detail Shetters' substantial contacts with the criminal justice system. Suffice it to say, that his juvenile record for larceny offenses is extensive, that he has apparently committed many burglaries, and that he has been resistive to rehabilitation, despite a sixteen-month stay at the McLaughlin Youth Center. It appears that Shetters has also committed offenses as an adult in other states, evidenced, in part, by his conviction of a felony in Arkansas. Shetters' sentence of five years with eighteen months suspended is therefore not clearly mistaken. *See Wood v. State*, 712 P.2d 420, 424–25 (Alaska App. 1986).

The judgment and sentence of the superior court are AFFIRMED.