Beatrice RISHER, Appellant,

v.

STATE of Alaska, Appellee.

No. 2074.

Supreme Court of Alaska.

June 17, 1974.

422

Stephen R. Cline, Asst. Public Defender, Fairbanks, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Harry Davis, Asst. Dist. Atty., Monroe Clayton, Dist. Atty., Fairbanks, Norman E. Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, ERWIN, CONNOR and BOOCHEVER, Justices, and RALPH MOODY, Superior Court Judge.

OPINION

BOOCHEVER, Justice.

Beatrice Risher was convicted of obtaining money by false pretenses from the Department of Health and Social Services of the State of Alaska in violation of AS 11.20.360.[1] The trial court found that by use of the alias, Idella Jackson, she concealed the fact that she had assets which rendered her ineligible to receive benefits under the Adult Public Assistance grant, Aid to the Disabled grant and Food Stamp Program, and that between October 7, 1968 and September 8, 1972, she received $11,650 by misrepresenting her assets and income. She was sentenced to five years imprisonment with eligibility for parole at the discretion of the parole board.

Mrs. Risher was represented at trial by an 81-year-old attorney, and her attorney on this appeal[2] contends that she was de-

---

1. AS 11.20.360 specifies:
   A person who, by false pretenses or by a privy or false token, and with intent to defraud, obtains, or attempts to obtain money or property from another, or who obtains, or attempts to obtain, with intent to defraud, the signature of a person to a writing, the false making of which is a forgery, upon conviction, is punishable by imprisonment in the penitentiary for not less than one nor more than five years.

2. The appeal was submitted on briefs without a request for oral argument.

prived of effective assistance of counsel by reason of trial counsel's incompetency. In addition, it is contended that the sentence was excessive.

Counsel does not argue that there was any particular error made by the trial lawyer which would have affected the result of the case. He contends only that a complete course of ineffective defense resulted in a trial that was a "mockery and farce".[3] The case is unusual in its reliance upon allegations of general incompetency of counsel without relating any particular conduct to the ultimate outcome. Analysis of the issue presented requires us to examine the standards of review applicable to contentions of ineffective representation.

█ The sixth amendment to the United States Constitution provides that an accused shall enjoy the assistance of counsel for his defense.[4] In Gideon v. Wainwright,[5] the United States Supreme Court held that the fourteenth amendment to the United States Constitution mandated application of the assistance of counsel clause of the sixth amendment to state trials. The right to assistance of counsel was thus recognized as essential for a fair trial. The mere fact that counsel represents an accused does not assure this constitutionally-guaranteed assistance. The assistance must be "effective" to be of any value.[6]

In determining what constitutes effective assistance of counsel, we initially applied the test of whether the conduct of counsel is "so incompetent as to deprive his client of a trial in any real sense—render the trial a mockery and a farce".[7] But in McCracken v. State, decided subsequently to the filing of the briefs in this case, we pointed out that the "mockery and farce" test has been criticized for placing an undue burden on the defendant and for being unduly vague and difficult to apply.[8] Although the parties to this appeal understandably relied on our pre-*Ma-Cracken* opinions setting forth the "mockery and farce" test, we believe that it is now incumbent upon us to re-examine that standard in light of recent decisions and thoughtful commentary. In McMann v. Richardson, the Supreme Court of the United States pointed the way to a more stringent criterion when it stated that rep-

---

3. In the appendix to appellant's brief, numerous incidents are itemized. Trial counsel repeatedly indicated he could not hear witnesses, the judge or the prosecutor, or had difficulty reading exhibits. On voir dire examination of a witness, counsel attempted to conduct a cross-examination; at various times he continued to make the same objection that had previously been overruled; on one occasion, he continued with an objection that the court had already sustained. It is contended that his opening statement, made after the state had rested, indicated that he did not understand the magnitude or content of the state's case in which 18 witnesses testified devastatingly. He asked that his opening remarks be considered as a motion for judgment of acquittal only after it was suggested by the judge.

4. Art. I, § 11 of the Constitution of the State of Alaska similarly provides that an accused shall be "entitled . . . to have the assistance of counsel for his defense".

5. 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

6. McCracken v. State, Opinion No. 1028, 521 P.2d 499 (Alaska 1974); Mead v. State, 445 P.2d 229 (Alaska 1968); Anderson v. State, 438 P.2d 228 (Alaska 1968).

7. Sullivan v. State, 509 P.2d 832, 835–836 (Alaska 1973); Tafoya v. State, 500 P.2d 247, 251 (Alaska 1972); White v. State, 457 P.2d 650, 653 (Alaska 1969); Thessen v. State, 454 P.2d 341, 352 (Alaska 1969), cert. denied, 396 U.S. 1029, 90 S.Ct. 588, 24 L.Ed.2d 525 (1970); Anderson v. State, 438 P.2d 228, 230 (Alaska 1968). *See also* Condon v. State, 498 P.2d 276 (Alaska 1972); Johnson v. State, 486 P.2d 379, 381 (Alaska 1971); Dimmick v. State, 473 P.2d 616, 618 (Alaska 1970); Lewis v. State, 469 P.2d 689, 692 n. 3 (Alaska 1970); Mead v. State, 445 P.2d 229, 233 (Alaska 1968).

8. McCracken v. State, Opinion No. 1028, 521 P.2d 499, wherein we referred to the following test suggested by Professor Finer:

[W]hether counsel exhibited the normal and customary degree of skill possessed by attorneys who are fairly skilled in the criminal law and who have a fair amount of experience at the criminal bar.

J. Finer, "Ineffective Assistance of Counsel," 58 Corn.L.Rev. 1077, 1080 (1973).

resentation must be "within the range of competence demanded of attorneys in criminal cases".[9] The United States Court of Appeals for the District of Columbia Circuit, which originally enunciated the farce and mockery test in Diggs v. Welch,[10] may have renounced it in Bruce v. United States,[11] calling instead for an assessment of whether "gross incompetence . . . blotted out the essence of a substantial defense. . . ."[12]

In Moore v. United States,[13] the United States Court of Appeals for the Third Circuit held that a defendant was entitled to the "exercise of the customary skill and knowledge which normally prevails at the time and place."[14] Recently in Beasley v. United States,[15] the United States Court of Appeals for the Sixth Circuit abandoned the "farce and mockery" standard, holding that the Constitution required that:

> Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.[16]

Beasley adds to the Moore test the requirement that the ordinary training and skill be in the criminal law. A lawyer may be highly competent in certain narrow areas of civil law, yet not capable of furnishing effective assistance in a criminal case. As hereinafter elaborated, we adopt the Beasley refinement of the Moore test as the standard to be applied in Alaska.[17]

Lawyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill in the criminal law. It is only when the ability is below the nadir of that range that we would hold it to constitute a deprivation of effective assistance of counsel. We are not condoning the second-guessing of trial counsel in making the myriad decisions encountered in a criminal trial, for it is a truism that hindsight furnishes 20–20 vision. All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions.

There is a further highly relevant consideration which we find present in the cases brought to our attention in which convictions have been reversed for ineffective assistance of counsel. The conduct of counsel must have contributed to the eventual conviction.[18] A defendant has

9. 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

10. 80 U.S.App.D.C. 5, 148 F.2d 667 (1945), cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945).

11. 126 U.S.App.D.C. 336, 379 F.2d 113 (1967).

12. Id. at 116–117.

13. 432 F.2d 730 (3rd Cir. 1970).

14. Id. at 736. A full explanation of the Moore rationale was quoted in McCracken v. State, Opinion No. 1028, 521 P.2d 499 n. 46.

15. Beasley v. United States, 491 F.2d 687, (6th Cir. 1974). In Brooks v. Texas, 381 F.2d 619, 625 (5th Cir. 1967), the somewhat question-begging standard of "reasonably likely to render and rendering reasonably effective assistance" was promulgated. See also West v. Louisiana, 478 F.2d 1026, 1033 (5th Cir. 1973).

16. 491 F.2d at 696.

17. This is essentially the test advocated by Professor Bines; see Bines "Remedying Ineffective Representation in Criminal Cases: Departures from Habeas Corpus," 59 Vir.L. Rev. 927, 938–39 (1973).

18. Courts which have abandoned the "farce and mockery" standard of ineffective assistance have imported a "prejudice" component into their analysis; see, e. g., United States ex rel. Green v. Rundle, 434 F.2d 1112, 1115 (3rd Cir. 1970). And see State v. Thomas, 203 S.E.2d 445 (West Va.1974), reaching the same result on the basis of harmless error. Even courts which still purport to retain the traditional "mockery" standard often appraise the effectiveness of counsel in terms of the effect counsel's errors might have had upon the outcome of trial; see, e. g., United States ex rel. Johnson v. Vincent, 370 F.Supp. 379 (S.D.N.Y.1974).

not suffered an unconstitutional deprivation of effective assistance of counsel because of error committed by his attorney which in no manner contributed to his conviction. For example, counsel might fail to exhibit normal and customary skill by failing to inquire as to whether a Miranda warning had been given his client before a confession was furnished. If, as a matter of fact, the Miranda warning had been given, the defendant cannot successfully contend that he was thus denied effective assistance. Because effective assistance embodies the concept of materially aiding in the defense, conduct or omissions which do not somehow contribute to a conviction by their failure to aid in the defense cannot constitute a constitutional deprivation of assistance of counsel.[19]

In effect, we are promulgating a two-pronged test. Before reversal will result, there must first be a finding that counsel's conduct either generally throughout the trial or in one or more specific instances did not conform to the standard of competence which we have enunciated. Secondly, there must be a showing that the lack of competency contributed to the conviction. If the first burden has been met, all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome.[20]

With these considerations in mind, we have reviewed appellate counsel's contention that Mrs. Risher was deprived of effective assistance of counsel at trial. While attack is made on the manner in which the defense was conducted, the brief is silent as to whether any different handling of the defense could have contributed to the outcome. In fact, by referring to the magnitude of the state's case and the devastating evidence presented against Mrs. Risher, appellate counsel appears to recognize that the manner in which the defense was conducted did not so affect the result. The state's case was based on the fact that she had used an alias, Idella Jackson, in purchasing property and obtaining the income from that property. If Idella Jackson was the alter ego of Mrs. Risher, the defendant had sufficient property and income so as to be ineligible for the welfare benefits which she received. Accordingly, her written applications denying income and ownership of property were

---

19. We are not confronted with a situation whereby reversal is mandated in order to deter non-enforcement of a constitutional right. Thus, we make a distinction between cases in which no counsel is furnished at all, and those in which it is contended that representation was ineffective. The absolute deprivation of counsel will be regarded as a constitutional violation *per se*, and no inquiries will be permitted as to whether the defendant would otherwise have been found guilty. *See* White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193 (1963); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); *see also* United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). The automatic reversal has the effect of placing judges on notice that such deprivations of counsel will not be permitted. Judges, however, are not in a position to evaluate instantly the tactics of trial counsel. Whether counsel is incompetent usually can be ascertained only after trial. An automatic reversal due to error committed by attorneys would lead to no prospective prophylaxis as judges normally would have no way of knowing in advance that counsel will prove to be incompetent. Similarly, it may be assumed that no counsel will deliberately seek the notoriety of having his efforts labeled as incompetent, so that no curative effect will result from a subsequent reversal where the incompetence has not contributed to the conviction. But where there is ineffective assistance of counsel due to the deliberate conduct of the trial judge, as in the appointment of counsel where there is a known conflict of interest, Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed.2d 680, 702 (1942), the deterrence rationale remains applicable, and reversal will be automatic. *See* Bines, "Remedying Ineffective Representation in Criminal Cases: Departures from Habeas Corpus," 59 Va.L.Rev. 927.

20. At times it may be necessary to remand for an evidentiary hearing on this issue. For example, if on appeal it is contended that trial counsel could have discovered helpful evidence, we might remand for a hearing on that issue. In most such cases, however, the necessity of an appeal and remand may be avoided by first applying at the trial court level for a new trial or moving for post-conviction relief.

false. But if such a person as Idella Jackson actually existed, owned the property in question (managed by Mrs. Risher), and received the income from it, Mrs. Risher would not be guilty. Trial counsel's efforts were thus directed at endeavoring to convince the court that Idella Jackson existed. Mrs. Risher testified that Idella had frequently come to Fairbanks, stayed at the Golden Nugget Motel and been acquainted with a number of other individuals. Only if competent counsel could have produced some evidence sufficient to create a reasonable doubt as to Idella Jackson's corporeal existence was acquittal possible.

Appellant does not contend that such a doubt could have been established in the face of the admittedly devastating evidence submitted. Testimony was adduced from five witnesses identifying Mrs. Risher as Idella Jackson. The seller of the duplex to "Idella Jackson" identified Mrs. Risher as the purchaser.

One witness even testified that Mrs. Risher had her sign the name Idella Jackson to some rent receipts, apparently for the purpose of indicating that the funds were received by Idella rather than Mrs. Risher. A handwriting expert testified that a letter to the Social Services Division stating:

> I do receive my rent from 1226 and 1228 McCarty Street, and I have a power of attorney for Bea Risher to take care of my business. I am sending Bea a copy of this letter.
>
> Yours truly,
> Idella Jackson

was in Mrs. Risher's handwriting.

Even more significantly, not one witness aside from Mrs. Risher could testify to even an acquaintance with Idella. Nor has counsel on appeal sought to reopen the case to produce any witness who could testify as to the existence of the mysterious Idella.

We note that Judge Sanders exhibited great patience and courtesy towards counsel for both sides in trying this case. He ensured that Mrs. Risher's attorney could hear the testimony and peruse documents introduced. While counsel could have better articulated some of his objections to testimony, he did vigorously endeavor to establish that there was an Idella Jackson, the only possible defense indicated to us. Applying the *Beasley* test as here modified, we hold that no reasonable doubt has been established that any incompetence of counsel contributed to the conviction.

On the basis of the record before us, we hold that Mrs. Risher was not deprived of her constitutional right under the federal and Alaska constitutions to effective assistance of counsel. If new evidence should be discovered indicating the existence of an Idella Jackson, remedies are available for postconviction relief under Criminal Rule 35(b).

■ Mrs. Risher also alleges that her sentence—the maximum allowable under AS 11.20.360—was excessive. We agree with the defendant that the sentence the trial judge imposed would be severe if a single, isolated act were involved, and if this was Mrs. Risher's first conviction. But there was justification for sentencing to a maximum term here. The judge carefully set forth the relevant facts and criteria upon which he based the imposition of sentence. The defendant perpetrated a fraud upon the Department of Health and Social Services by a course of conduct extending over a period of four years, and involving repeated acts of deceit. The amount of money fraudulently obtained ($11,650.00) was considerable. Further, we note that Beatrice Risher had a prior felony conviction for perjury. And the probation officer's report recommended a maximum sentence. Finally, the sentence imposed made provision for an earlier release at the discretion of the parole board. Under these circumstances, Mrs. Risher's sentence cannot be said to have been so excessive as to lead us to believe that the

trial court was clearly mistaken [21] in imposing it.

Affirmed.

FITZGERALD, J., not participating.

RABINOWITZ, Chief Justice, with whom ERWIN, Justice, joins, concurring.

Although I willingly join in the interment of the "mockery and farce" test, the demise of which was foreshadowed in McCracken v. State,[1] I wish to note an area of doubt on my part. Under the twofold test adopted today, not only must the defendant show a violation of the *Beasley-Moore* standard of competency required of counsel but he must also demonstrate that counsel's lack of skill contributed to his conviction.[2]

My concern is that this prejudice requirement is too stringent a standard· once it is shown that the defendant's right to effective assistance of counsel, under either the Alaska or Federal constitution, was violated. In my opinion, Judge Bazelon offers a cogent argument for relieving the defendant of the burden of showing prejudice once ineffectiveness has been proven.[3] Pointing to the fact that in regard to other federal criminal constitutional guarantees the government must prove harmless error beyond a· reasonable doubt, Judge Bazelon questions the validity of requiring the defendant to show prejudice after he has demonstrated that his constitutional right to effective assistance of counsel has been violated.[4]

Despite my leanings towards adoption of Judge Bazelon's choice of placement re-

garding the burden of proof of prejudice, for now I am willing to wait and observe the operation of our new rule under adversarial testing.

---

21. *See* Lemon v. State, Opinion No. 1036, 522 P.2d 160 (Alaska 1974); Adams v. State, Opinion No. 1032, 521 P.2d 516 (Alaska 1974); McClain v. State, Opinion No. 1016, 519 P.2d 811 (Alaska 1974).

1. Opinion No. 1028, 521 P.2d 499 (Alaska 1974).

2. Expounding on this latter requirement, we further held that the required proof of prejudice resulting from ineffective assistance of counsel must "create a reasonable doubt that the incompetence contributed to the outcome."

3. D. Bazelon, The Defective Assistance of Counsel, 42 Cincinnati L.Rev. 1 (1973).

4. *Id.* at 29–33.· Judge Bazelon perceives the crux of the right to the effective assistance of counsel issue as

. . . whether counsel did everything that a diligent lawyer could reasonably be expected to do, whether he filled the role imposed on him by the rigors of the adversary system. The articulation of specific duties could help the courts define that role. *Id.* at 33.