Gregory JACKSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2026.

Court of Appeals of Alaska.

Feb. 11, 1988.

Thomas A. Flippen, II, Boyko, Davis, Dennis, Baldwin & Breeze, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Gregory Jackson was convicted, following a jury trial, of murder in the first degree. AS 11.41.100. Superior Court Judge J. Justin Ripley sentenced Jackson to fifty years' imprisonment. Jackson is eligible for parole after twenty years pursuant to AS 12.55.125. Following his conviction and sentencing, Jackson filed a motion for a new trial based on his contention that he received ineffective assistance of counsel at his trial. Following an evidentiary hearing in the trial court, Judge Ripley denied Jackson's new trial motion. Jackson appeals to this court from the denial of his new trial motion. He also argues that his sentence was excessive.

## FACTS

During the early morning hours of November 10, 1983, Gregory Jackson and a female companion, his codefendant, Carmelita A. Danzy, aka Carmelita A. Jones, went to Newkirk's, an after-hours club in the Fairview area of Anchorage. Newkirk's has a reputation for drugs, prostitution, and violence. Gregory Jackson customarily armed himself when going to such places.

Inside, Danzy was approached by Vernon Jackson, her former boyfriend. Vernon Jackson was not related to Gregory Jackson. Vernon Jackson wanted to talk to Danzy. Danzy followed Vernon Jackson into the bathroom for a private conversation. After a short time, Gregory Jackson went to the bathroom to check on Danzy. Gregory Jackson stood in the doorway and told Danzy to "talk outside." Danzy left the bathroom, leaving the two Jacksons to face each other.

According to Albert Ford, who was present in the bathroom, just as Danzy left, Vernon Jackson moved towards Gregory Jackson. Vernon reached for Gregory's hand which was inside his jacket. Ford testified that Gregory Jackson then pulled a gun and fired two shots. Gregory Jackson fired twice more as Vernon Jackson tried to leave the bathroom.

Sherry Newkirk, the bartender, testified that she heard two shots. She then saw the bathroom door open and saw Vernon Jackson coming out. She then heard two more bullets. A pathologist testified that Vernon Jackson's body was hit by three bullets. One entered the upper chest and passed through the heart. Another bullet entered Vernon Jackson's right side and exited his chest. A third entered his lower back and passed through his abdomen. A fourth shot hit the right sleeve of Vernon Jackson's coat but did not strike him.

Gregory Jackson, however, testified that Vernon Jackson had moved towards him in a menacing manner while reaching inside his own jacket. During the brief struggle, Gregory Jackson pinned Vernon Jackson's hand against his chest and knocked him off balance. This allowed Gregory Jackson time to pull his own gun. Thus, when Vernon Jackson once again came towards Gregory Jackson, Gregory Jackson said he fired four shots.

Vernon Jackson died from the gunshot wounds. Gregory Jackson argued at trial that he acted in self-defense. A .22 caliber automatic pistol, with four rounds in the clip, was found in Vernon Jackson's pocket shortly after the homicide. The pistol did not have a round chambered. In order for the pistol to be fired, the slide would have to be pulled back and released to chamber a round.

## DISCUSSION

The Alaska standard for determining whether a defendant is entitled to a new trial based on ineffective assistance of counsel is set forth in *Risher v. State*, 523 P.2d 421 (Alaska 1974). In *Risher*, the Supreme Court of Alaska established a two-prong test which a defendant must meet to obtain a new trial based on a claim of incompetence of counsel. First, the defendant must establish that defense counsel's overall performance did not conform to the requisite standard of competence.[1]

1. "All that is required of counsel is that [counsel's] decisions, when viewed in the framework

Second, the defendant must create a reasonable doubt that the lack of competency contributed to the conviction. *Id.* at 425. The federal test for whether a defendant is entitled to a new trial based on a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* court articulated a two-prong standard similar to the standard which the Alaska Supreme Court established in *Risher.* In *Strickland,* the court stated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

In *Strickland,* the court placed the following burden on the defendant to show prejudice: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. Although the federal and Alaska tests for obtaining relief based on ineffective assistance of counsel are similar, the defendant has a lesser burden of showing prejudice under the Alaska test.

of trial pressures, be within the range of reasonable actions taken by an attorney skilled in

*Wilson v. State,* 711 P.2d 547, 549 (Alaska App.1985).

Jackson argues that he received ineffective assistance of counsel based on his attorney's failure to properly investigate and prepare for trial, his attorney's failure to call an allegedly critical witness, his attorney's failure to *voir dire* jurors with respect to their racial attitudes, and his attorney's failure to ask for lesser-included offense instructions.

Jackson was represented at trial by an experienced criminal defense attorney from Illinois. His attorney came to Anchorage to confer with Jackson at the time of arraignment, then returned to Chicago. A jury trial was held in Anchorage in March 1984, in front of Judge Ripley. After Jackson was convicted, his trial counsel testified at an evidentiary hearing on Jackson's motion for a new trial. His trial counsel testified that he had been practicing law for twenty-five years and, during that time, had averaged more than one murder or manslaughter trial per month, totaling several hundred homicide trials. From the record, it appears that his attorney is highly regarded as a criminal defense attorney in Illinois, particularly in homicide cases.

At the February evidentiary hearing, Jackson's trial counsel testified that after his initial discussion with Jackson, and based upon his prior dealings with Jackson, he was satisfied he could prevail at trial by arguing that Jackson had acted in self-defense. Although the district attorney's office apparently sent copies of the police reports, Jackson's trial attorney stated that he had not seen any discovery materials prior to arriving in Alaska, just before trial. He added that he did no investigation and seriously underestimated the strength of the state's case. Jackson's attorney stated that his failure to investigate the case and to request additional time to seek other witnesses was a disservice to Jackson.

criminal law...." 523 P.2d at 424.

This court has formerly cited with approval the American Bar Association's Standards relating to the defense function in the context of an ineffective assistance of counsel case. *Arnold v. State*, 685 P.2d 1261, 1265 (Alaska App.1984). Those standards state:

It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to the facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.

I *Standards for Criminal Justice*, § 4–4.1 (Approved Draft 1982).

The investigation by Jackson's trial counsel in this case was clearly inadequate for a first-degree murder charge. Consequently, we have reviewed the record with particular care to determine whether Jackson was prejudiced.

At the evidentiary hearing on his new trial motion, Jackson presented several witnesses whom he claimed should have been called at his trial. Judge Ripley concluded that had the witnesses presented in the new trial hearing been presented at Jackson's trial, they would not have affected the verdict. Judge Ripley conducted the actual trial and observed the witnesses testify at the post-conviction relief hearing. Thus, his findings are certainly entitled to considerable deference. The questions of whether a defense counsel's performance was adequate and whether prejudice has been established, however, are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. Therefore, given the inadequate investigation in this case, we have independently scrutinized the testimony of the witnesses presented at the evidentiary hearing.

■ At the evidentiary hearing, Hurist Joubert testified that Albert Ford, the state's major eyewitness to the events surrounding the shooting, had made a statement the day after the homicide indicating that he believed that Gregory Jackson had killed Vernon Jackson in self-defense. Joubert also testified that Ford had said that the police had forced him to testify against his will. Joubert had formerly been convicted of crimes of dishonesty. Joubert had been in jail with Gregory Jackson, and the state argued that he had the chance to fabricate testimony favorable to Jackson.

The record establishes that the decision not to call Joubert was a tactical choice on the part of Jackson's attorney. His attorney testified that he was aware of Joubert's potential testimony at the time of trial, but he concluded that it would have been a waste of time to call him as a witness. Tactical choices of counsel are given great deference. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Jackson argues that his counsel's tactical decisions in this case are tainted by his lack of investigation. Judge Ripley found, however, that there had been a very thorough police investigation of the case which was set out in the police reports provided to his attorney. Furthermore, Judge Ripley found that in spite of his late preparation, Jackson's counsel had the opportunity to conduct further investigation during the recess of the trial between Friday, March 16, 1984, when the state rested around noon, and Monday, March 19, 1984, when the defense began its case. Neither of these findings is challenged on appeal. Given these facts, it appears that his attorneys tactical decision not to call Joubert was based on an adequate knowledge of the case. Joubert was certainly not an eyewitness to the shooting, and his credibility concerning whether Ford actually made the statement attributed to him is questionable. Under these circumstances, we conclude that the tactical decision not to call Joubert did not constitute ineffective assistance of counsel.

■ At the evidentiary hearing, Jackson presented Louis Howard as a witness. Howard testified that Mary Stills stated that Vernon Jackson left Newkirk's shortly before the homicide to retrieve his firearm from a car. Stills, however, testified that she could not remember that incident. Jackson argues that this testimony would tend to establish that Vernon Jackson armed himself specifically for the encounter with Gregory Jackson. In evaluating this testimony, Judge Ripley pointed out that Vernon Jackson was found in possession of a loaded firearm following the homicide. He concluded that it was not particularly material whether the decedent, Vernon Jackson, always carried a firearm or whether he had gone out to the car to obtain a firearm after seeing Gregory Jackson inside Newkirk's.

The testimony concerning whether Jackson got the firearm from the car was not particularly persuasive and did not directly establish that Vernon Jackson went to get the gun after seeing Gregory Jackson. Howard was impeached with a 1984 conviction for multiple counts of forgery. It was also established that Howard had been incarcerated with Gregory Jackson between the time of Jackson's first trial and the time Howard came forward as a witness. We agree with Judge Ripley that it does not appear that this testimony would have been particularly material.

Tyrone Brown and Calvin Chatman also testified at the hearing. Chatman testified that he was present at the scene of the crime. The state, however, showed that Chatman was in jail on the date the crime was committed. Brown, Chatman, and Howard testified that Vernon Jackson had a reputation as a cocaine dealer. Brown, Chatman, Joubert, and Larry Cleveland testified that Vernon Jackson had a reputation for violence. Judge Ripley concluded that Vernon Jackson's reputation as a cocaine dealer would not be admissible at trial.

■ This appears to be a sound ruling. Whether or not Vernon Jackson was a cocaine dealer does not appear to be relevant to any issue at trial. Gregory Jackson testified at trial that he did not know Vernon Jackson and was not aware of his reputation for violence. Thus, evidence of Vernon Jackson's reputation for violence would not have been admissible to show Gregory Jackson's state of mind.

■ The testimony could have been admissible, however, as circumstantial evidence that Vernon Jackson was the initial aggressor. In evaluating this testimony, Judge Ripley concluded that Vernon Jackson's character had already been adequately established at trial by the testimony of witnesses, by his presence in Newkirk's, and by the fact that he was carrying a concealed firearm. Judge Ripley concluded that the reputation for violence testimony would have been cumulative and not particularly productive. He concluded that Jackson's attorney had chosen to base his case primarily on the testimony of his client, and the cross-examination of the state's witnesses. All of the witnesses who testified as to Vernon Jackson's reputation for violence had been confined with Gregory Jackson prior to coming forward with their testimony. Furthermore, Cleveland and Chatman had felony convictions for crimes of dishonesty.

It appears that Vernon Jackson's reputation for violence was established to a large degree by the facts of the case. It also appears that Jackson's attorney was aware that he could have obtained further information as to Vernon Jackson's reputation for violence, but made a tactical choice not to do so. We agree with Judge Ripley that the failure to find or call these witnesses would not have influenced the jury's decision in this case, and thus did not constitute ineffective assistance of counsel.

■ Jackson contends that his counsel's failure to request any lesser-included offense instructions was ineffective assistance. This case went to the jury on instructions for murder in the first degree and murder in the second degree only. At the evidentiary hearing, Jackson's attorney testified that this was a tactical choice. He believed that his client had an excellent chance of being totally acquitted. He was afraid that if he requested lesser-included offense instructions, the jury might convict

his client of one of the lesser-included offenses rather than totally acquitting him. Judge Ripley found that this was a reasonable tactical choice. As we have stated before, tactical choices of counsel are entitled to deference. We agree with Judge Ripley that this was a reasonable tactical choice.

█ Jackson further contends that his attorney was ineffective because he chose not to *voir dire* the jury on racial issues. Vernon Jackson, the victim, was black. Moreover, Gregory Jackson, his attorney, and the major witnesses in the case are black. At the beginning of jury *voir dire*, the prosecutor asked the jurors a question concerning any racial attitudes. At the evidentiary hearing, Jackson's attorney testified that, based upon his experience, he decided that it was not necessary to *voir dire* on the issue of race. He stated that people normally do not admit any racial prejudice. He believed that it was best not to question on this issue. Judge Ripley found that this was a reasonable, tactical choice. We agree.

█ In summary, we find this to be a close case. We are particularly troubled by Jackson's counsel's lack of investigation. We have therefore given this record particularly close scrutiny to determine whether Jackson was competently represented and received a fair trial. Except for his lack of investigation, it appears that Jackson's attorney was an experienced and capable attorney. Although Jackson's attorney may have initially underestimated the state's case, he had a significant period of time over the weekend, in the middle of the case, after the state rested. Trial counsel indicated that he was aware of Joubert's potential testimony, and he was aware of the possibility of establishing Vernon Jackson's reputation for violence. It appears that he made reasonable, tactical choices not to pursue these possibilities, choosing instead to try the case based on the witnesses who were present at Newkirk's.

Gregory Jackson certainly had a triable case of self-defense based mainly upon Vernon Jackson's possession of a loaded firearm. It appears, however, that he was convicted based upon the eyewitness testimony of Albert Ford and Sherry Newkirk, the fact that Vernon Jackson's weapon did not have a round in the chamber, and the location of the bullet entry wounds in Vernon Jackson's body. It does not appear that further investigation by counsel would have undermined this evidence.

The best indication of whether an attorney's failure to investigate a case resulted in prejudice to a defendant lies in the nature of the evidence that is presented in the post-conviction relief hearing. We have independently reviewed the evidence that Gregory Jackson claims should have been presented at his trial. We find, in agreement with Judge Ripley, that this evidence does not appear to be sufficiently material to grant a new trial based on incompetence of counsel.

█ Finally, Jackson argues that his sentence was excessive. Jackson was thirty-seven years old at the time of sentencing. He had three prior felony convictions: a Mann Act violation, possession of a controlled substance, and possession and distribution of heroin. He also had a misdemeanor conviction for unauthorized use of a weapon and unlawful possession of ammunition. All of these convictions took place from 1971 to 1973. Jackson completed parole on his latest felony conviction in 1981, two years before committing the present offense.

The maximum sentence for murder in the first degree is ninety-nine years. In *Riley v. State*, 720 P.2d 951, 952 (Alaska App. 1986), we pointed out that Alaska courts have consistently approved the imposition of maximum sentences for murder in the first degree. Given Jackson's age, his prior record, and the seriousness of the present offense, we conclude that the fifty-year sentence which Judge Ripley imposed in this case was not clearly mistaken.

The judgment of the superior court is AFFIRMED.