**STATE of Alaska, Appellant,**

v.

**Michael P. SIMPSON, Appellee.**

**Michael P. SIMPSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–5942, A–5952.**

Court of Appeals of Alaska.

Oct. 10, 1997.

As Modified on Grant of Rehearing in Part Oct. 27, 1997.

---

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant in A–5942 and Appellee in A–5952.

Cynthia L. Strout, Law Office of Cynthia L. Strout, Anchorage, for Appellee in A–5942 and Appellant in A–5952.

Before COATS, C.J., RABINOWITZ, Senior Supreme Court Justice,* and Joannides, District Court Judge.**

COATS, Chief Judge.

A jury convicted Michael P. Simpson of one count of sexual abuse of a minor in the first degree, three counts of sexual abuse of a minor in the second degree, and three counts of contributing to the delinquency of a minor. AS 11.41.434(a)(2); AS 11.41.436(a)(3); AS 11.51.130(a)(1); AS 04.16.050. Superior Court Judge Karl S. Johnstone sentenced Simpson to a composite sentence of ten years' imprisonment with two years suspended. This court affirmed the convictions in *Simpson v. State,* 796 P.2d 840 (Alaska App. 1990). Simpson then filed an application for post-conviction relief, alleging that his due process rights under the Alaska Constitution were violated, that newly discovered evidence warranted vacation of his conviction, and that his conviction should be set aside because he received ineffective assistance of counsel at trial. Superior Court Judge Joan M. Woodward denied relief based on the due process and newly discovered evidence claims, but granted a new trial based on the ineffective assistance of counsel claim. Simpson appeals Judge Woodward's decisions on the issues in which she denied post-conviction relief. The state appeals on the issue in which she granted post-conviction relief.

The charges against Simpson arose from accusations of several juvenile males who Simpson met either through his work at Alaska Children's Services Emergency Shelter or as a foster parent. Simpson was convicted of sexual assault in the first degree based upon allegations that he had performed fellatio on V.Q. He was convicted of sexual abuse of a minor in the second degree based upon allegations that he had sexual contact with V.Q., J.N., and M.S. He was convicted of contributing to the delinquency

---

\* Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Administrative Rule 23(a).

\*\* Sitting by assignment made pursuant under article IV, section 16 of the Alaska Constitution.

of a minor based upon allegations that he had furnished liquor to V.Q., J.N. and R.S.[1]

An investigator with the Anchorage Police Department investigated the allegations against Simpson and sat at the prosecuting attorney's table as the chief investigating officer during Simpson's trial. Following Simpson's conviction, Simpson learned the investigator was under investigation himself for misconduct with juvenile males, including some of the juveniles who testified against Simpson. The state prosecuted the investigator for official misconduct; he was acquitted following a jury trial.

J.N., one of Simpson's alleged victims, was also an alleged victim in the investigator's prosecution. According to Judge Woodward's findings entered at the conclusion of the post-conviction relief hearing, the investigator "also engaged in sexual contact with victim M.S. prior to the time that M.S. made his allegations against [Simpson]. It is unclear whether [the investigator] was abusing M.S. [at the time of Simpson's] trial." In his post-conviction relief application, Simpson argued that the facts surrounding the investigation of the charges against him showed that the investigation was so deficient that it violated his right to due process of law. He also contended that the information which he received about the investigation entitled him to a new trial based upon newly discovered evidence. Judge Woodward rejected these claims. Although she stated that the investigator's conduct was "abhorrent," she found that the juvenile witnesses who testified against Simpson continued to reaffirm their trial testimony against Simpson. She found that there was no evidence to support Simpson's theory that the investigator had influenced the juvenile witnesses to testify falsely against Simpson. She also concluded that although "better police practices could have been employed" in the Simpson investigation, the deficiencies in the investigation did not rise to the level of due process violations.

In his application for post-conviction relief Simpson also contended that his trial counsel's representation constituted ineffective assistance of counsel. Judge Woodward rejected several of Simpson's contentions but concluded that Simpson's counsel's representation had been ineffective in that he failed to move for a severance of the charges against Simpson and had failed to utilize information which was available from the alleged victims' juvenile and medical records and correspondence which would have cast doubts about their credibility with the jury.

■■■ The state appeals from Judge Woodward's findings and conclusion that Simpson was afforded ineffective assistance of counsel. The standard for reviewing claims of ineffective assistance of counsel is set forth in *Risher v. State*, 523 P.2d 421 (Alaska 1974). In *Tucker v. State*, 892 P.2d 832, 834 (Alaska App.1995), we discussed the *Risher* standard as follows:

> *Risher* creates a two-prong standard for evaluating ineffective assistance of counsel claims. Under the first prong, the defendant must establish that trial counsel failed to "perform at least as well as a lawyer with ordinary training and skill in the criminal law[.]" [*Risher v. State*, 523 P.2d 421 (Alaska 1974) ] at 424 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir.1974)); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The standard for ineffective assistance is minimal competence; to establish ineffective assistance, the defendant must show "a level of performance that no reasonably competent attorney would provide." *State v. Jones*, 759 P.2d 558, 568 (Alaska App.1988) (citation omitted). Under the second prong, the defendant must create a reasonable doubt as to whether counsel's lack of competency contributed to the conviction. *Risher*, 523 P.2d at 425; *see also Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Whether an attorney's performance constitutes ineffective assistance of counsel is a mixed question of fact and law. *State v. Laraby*, 842 P.2d 1275, 1280 (Alaska App. 1992).

---

1. The jury acquitted Simpson of three counts of sexual abuse of a minor. The three counts of which Simpson was acquitted involved M.S., J.N., and R.S.

Before trial, Simpson's trial attorney was given access to *in camera* documents which potentially could have been used to impeach the credibility of the victims who testified against Simpson. Judge Woodward summarized these materials as follows:

> The useful documentary evidence included, but was not limited to, psychological evaluations of victim M.S. which referred to him as being brain-damaged, possibly having an antisocial personality disorder and/or Tourette's Syndrome, and being a chronic liar and manipulator; notations of prescriptions for antipsychotic medication that M.S. was taking at the time of trial; records revealing M.S.'s prior claims of physical abuse which had been investigated but never substantiated; documentation of V.Q.'s history of lying; a letter from V.Q.'s grandmother describing his fabrication of stories to leave placements other than Simpson's home; records regarding V.Q.'s psychiatric state; and documentation referencing J.N.'s history as a sexual abuse victim and perpetrator and his credibility problems.

She also noted that Simpson's attorney failed to contact M.S.'s parents about testifying after Simpson informed him that the parents had significant information regarding M.S.'s mental status and truthfulness and contacts with the investigating officer. Judge Woodward concluded that "[t]here is no question that much of the above evidence would have been admissible in one form or another. (Records custodians, prescribing doctors, and/or an expert psychologist or psychiatrist, etc. might have been required to lay appropriate foundation.)" She also concluded that Simpson's trial attorney did not make a tactical decision to not use this information, but "completely failed to perceive the worth of a veritable gold mine of information. No reasonably competent attorney would have overlooked the value of this evidence. Counsel did not strategize. He committed error." Judge Woodward concluded that counsel's failure to utilize the extensive information

which potentially cast doubt on the credibility of Simpson's alleged victims raised a reasonable doubt concerning whether a jury would have convicted Simpson.

We believe that Judge Woodward's findings and conclusion that Simpson received ineffective assistance of counsel are supported by the record. *Cf. Arnold v. State*, 685 P.2d 1261 (Alaska App.1984) (attorney rendered ineffective assistance of counsel when he advised defendant regarding changing his plea, without adequately informing himself regarding relevant facts and law, and defendant relied upon attorney's advice). James McComas, an experienced criminal defense attorney, testified at the post-conviction relief hearing that there was a wealth of information that was extremely useful to attack the credibility of the witnesses against Simpson. He testified that much of the information was admissible and that the failure to utilize these materials constituted ineffective assistance of counsel. He gave specific examples of how these materials should have been used. He concluded that the failure to make effective use of these materials could have influenced the outcome of Simpson's case. He pointed out that this case was a credibility contest where impeachment of the juvenile witnesses was critical. Judge Woodward could properly have relied on this testimony, as well as her own evaluation of the materials and their admissibility, to conclude that Simpson's trial counsel was ineffective in failing to use the materials in question and that this failure contributed to Simpson's conviction.[2]

The convictions are REVERSED.

MANNHEIMER, J., not participating.

**2.** Our conclusion that Simpson's convictions must be reversed based upon ineffective assistance of counsel makes it unnecessary for us to address the other issues which the parties raise in this appeal. However, there are some additional issues which we will address summarily. The state contended that the trial court erred in failing to dismiss Simpson's amended application for post-conviction relief for failure to establish a *prima facie* case. However, the state has not

shown that it ever moved to dismiss Simpson's amended application. Furthermore, the state has not shown how it was prejudiced by any deficiency in Simpson's amended application.

Simpson's contention that the police investigation violated his due process rights is worthy of some comment. When the government violates a defendant's due process rights, dismissal of the case against the defendant with prejudice is a potential remedy. *See Vaden v. State,* 768 P.2d 1102, 1107–08 (Alaska 1989). However, in order to obtain dismissal by showing a due process violation, "illegal conduct of the government is not a *per se* bar to prosecution; the test is whether the government's conduct is outrageous enough to warrant dismissal of the charges." *Id.* at 1107 (citations omitted). As a general premise, to be outrageous enough to bar prosecution "the government must have 'engineered and directed the criminal enterprise from start to finish.'" *Id.* at 1108 (footnote and citations omitted). In *Vaden,* the supreme court appeared to approve the concept that when police violate the law the correct remedy is generally to prosecute the police rather than to free the defendant. *Id.* at 1108. In the instant case, although Judge Woodward termed the investigator's conduct

"abhorrent," she found no connection between his investigation and the charges against Simpson. After reviewing the witnesses' statements she concluded that the juvenile witnesses who testified against Simpson had not recanted their testimony. She found that there was "certainly no evidence to support [Simpson's] theory that [the investigator] planted the Simpson sexual assault concept in the minds of these victims in order to satisfy either [the investigator's] own deviant needs or to deflect attention away from the investigation against him then under way at A.P.D." She found that although "better police practices could have been employed in some respects," the deficiencies in the police investigation did not constitute due process violations. Judge Woodward's findings and conclusions are supported by the record. Although the facts which were presented to Judge Woodward might be sufficient to entitle Simpson to a new trial based upon newly discovered evidence, they were not sufficient to establish a due process violation. Since we have already concluded that Simpson's convictions must be reversed, we do not need to decide whether Simpson would be entitled to a new trial based upon newly discovered evidence.