NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JACKSON E., ) | |
| ) | Supreme Court No. S-17655 |
| Appellant, ) | |
| ) | Superior Court No. 3PA-17-00108 CN |
| v. ) | |
| ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, ) | |
| OFFICE OF CHILDREN'S SERVICES, ) | No. 1794 – October 7, 2020 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Michael Horowitz, Law Office of Michael Horowitz, Kingsley, Michigan, for Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

## I. INTRODUCTION

A child was found to be in need of aid based on her father's substance abuse, and the father's parental rights were terminated. The father argues that he received ineffective assistance of counsel at the termination trial. But because the father

---

\* Entered under Alaska Appellate Rule 214.

cannot satisfy either prong of our test for demonstrating ineffective assistance of counsel, we affirm the superior court's order terminating parental rights.

## II.    FACTS AND PROCEEDINGS

Brittany D.-E. was born in October 2017 to Kristen D. and Jackson E.[1] Brittany is an Indian child within the meaning of the Indian Child Welfare Act (ICWA).[2] At birth she tested positive for methamphetamine, amphetamine, cotinine, and cannabinoids.

### A.    Removal And Case Plan

OCS took custody of Brittany shortly after her birth, filing an emergency petition for adjudication and temporary custody the same day. In the petition OCS alleged that Brittany was a child in need of aid under AS 47.10.011(6) (physical harm), (9) (neglect), and (10) (substance abuse).

OCS developed case plans for both parents in November. Jackson's case plan included three goals: (1) learn effective communication skills and ways to "manage his emotions and control his anger"; (2) "manage his impulse control and maintain his sobriety"; and (3) "provide a safe and stable home" for Brittany. The case plan required Jackson to complete a domestic violence intervention program, parenting classes, and a substance abuse assessment. It also required that he participate in random urinalysis tests (UAs), meet with his caseworker at least once a month, and develop a financial plan.

### B.    Termination

In March 2019 OCS filed a termination petition. OCS alleged that Jackson had not completed the substance abuse assessment, the domestic violence assessment, or the parenting classes. He had failed to appear for more than 50 UAs between

---

[1]    We use pseudonyms for all family members.

[2]    *See* 25 U.S.C. § 1903(4) (2018).

November 2017 and April 2019. OCS asked that the court terminate both Kristen's and Jackson's parental rights.

The termination trial was held in September. Jackson was not present at the start of the first day, and his attorney requested a continuance, explaining that she had expected him to attend and had "not been able to speak with him recently regarding the failure of the negotiation with the State and preparing for trial." After giving Jackson's attorney an opportunity to contact him, the court denied the continuance, noting that Jackson "did have notice of the hearing."

Kristen's attorney represented that her client was willing to stipulate to the termination of parental rights under AS 47.10.011(10). But a stipulation was not possible because it needed to be in writing and signed by the parent, and Kristen was participating telephonically from prison. OCS and Kristen's attorney therefore reached an agreement whereby "[OCS] would present a very concise case with all of its relevant evidence sources focusing primarily on subsection (10), and the understanding is that [Kristen] would not be opposing [OCS's] abbreviated case."

Jackson's attorney took a different approach. She explained to the court: "I don't have the same authority for [Jackson] to stipulate. However, I would acknowledge that the State's case regarding subsection (10) . . . covers the necessary elements." After a brief discussion with Jackson's attorney, OCS's attorney told the court that "it sounds like the parents' intention is that they would not be actually contesting the case" and that it "does not sound like there would be objection to [the expert] being qualified as the ICWA expert concerning . . . child welfare and, more specifically, substance abuse and its effect on children." He explained that OCS would present evidence on Kristen's substance abuse as a ground for CINA status under AS 47.10.011(10), but that for Jackson "all relevant subsections" would apply. The court summarized its understanding of the agreement: "It's basically a slow stipulation."

The first two witnesses were a clinical psychologist and a state trooper; they both testified only about Kristen. The third witness — the ICWA expert — was a social worker. She testified that after April 2018 both parents "began to lessen their involvement and engagement in services." She testified that, based on her review of Jackson's criminal charges, his substance abuse "goes back many years" and that neither parent was "demonstrating a pattern of sobriety, stability, consistency, and availability." Jackson's attorney did not cross-examine her.

The court next heard testimony from Jackson's aunt, who was Brittany's foster parent. The aunt discussed her interactions with OCS, the parents' tardiness and inconsistency with regard to visits, and both parents' admissions to her that they continued using drugs. Jackson's attorney declined to cross-examine the aunt because "[her] question [would] be cumulative."

The court then heard testimony from the OCS caseworker. The caseworker testified that Jackson had missed a number of UAs and that she "was getting the impression that he was UA-ing when he knew he would be clean." She testified that Jackson refused to complete a hair follicle test and that she referred him for a substance abuse assessment but he refused to attend, despite admitting to his drug use. The caseworker testified that she also referred Jackson to a parenting class which he did not complete, and that he refused to complete his domestic violence assessment because of an open criminal case against him. She testified that although Jackson consistently attended visitation with Brittany, he failed to attend meetings with her and other OCS caseworkers. She also discussed Jackson's March 2019 case plan evaluation, which indicated that he had made "no progress" on two of his three goals. She stated that his case plan was "incomplete, with really barely any engagement."

Jackson's attorney did cross-examine the caseworker. The attorney first asked about Jackson's objections to the hair follicle test, suggesting that they were

"essentially based on cultural reasons." The caseworker denied hearing this from Jackson. The attorney then asked about the locations for Jackson's visits and which phone numbers the caseworker used to try to reach him. She asked about the domestic violence assessment, and specifically why the caseworker did not email Jackson to let him know when it had been rescheduled or otherwise make sure he received notice. Finally, she asked the caseworker to confirm that "[Jackson] was able to interact appropriately with [Brittany]" during visits, which the caseworker did.

At the close of trial, the court invited the parties to submit written closing arguments. Jackson's attorney made a number of arguments in her written closing: (1) OCS had not proven by clear and convincing evidence that Jackson had subjected Brittany to conduct or conditions that made her a child in need of aid; (2) OCS had not shown that Jackson failed to remedy the conduct or conditions that made Brittany a child in need of aid; (3) OCS had not made "active efforts" as required by ICWA;[3] (4) OCS had not met its burden under ICWA to show that "the evidence, including testimony of qualified expert witnesses, establishe[d] beyond a reasonable doubt that the continued custody of the child by the parent . . . [was] likely to result in serious emotional or physical damage to the child";[4] and (5) OCS had not shown termination was in Brittany's best interests.

In November the court issued an order terminating Jackson's parental rights. The court credited the caseworker's testimony that Jackson "had not engaged in the process," citing his failures to complete most substantive requirements of his case plan.

Jackson appeals, arguing that he received ineffective assistance of counsel.

---

[3]      *See* 25 U.S.C. § 1912(d).

[4]      *See* 25 U.S.C. § 1912(f).

## III.   STANDARD OF REVIEW

"A parent has a due process right to effective assistance of counsel in a termination of parental rights proceeding.  Whether this right was violated is a question of law we consider de novo."[5]

## IV.   DISCUSSION

We apply a two-pronged test in evaluating ineffective assistance of counsel claims.[6]  The first prong requires a litigant to "show that [his or her] attorney's performance was below a level that any reasonably competent attorney would provide."[7]  The second prong requires a litigant to "demonstrate that counsel's improved performance would have affected the outcome of the case."[8]  A litigant must satisfy both prongs.[9]

### A.   Jackson Fails To Demonstrate That His Attorney's Performance Was Below A Level That Any Reasonably Competent Attorney Would Provide.

Jackson argues that his attorney violated the Alaska Rules of Professional Conduct by "agree[ing] to the proposed abbreviated process."  He cites Rule 1.2(a), which states:  "A lawyer may take such action on behalf of the client as is impliedly

---

[5]    *Stanley B. v. State, DFYS*, 93 P.3d 403, 408-09 (Alaska 2004) (citation omitted).

[6]    *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1265 (Alaska 2014); *see also Risher v. State*, 523 P.2d 421, 425 (Alaska 1974) (establishing two-pronged test).

[7]    *Chloe W.*, 336 P.3d at 1265 (citing *Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 858-59 (Alaska 2013)).

[8]    *Id.*

[9]    *See id.*

authorized to carry out the representation. A lawyer shall abide by a client's decision whether to offer or accept a settlement." Jackson argues that his attorney violated this rule by agreeing that "[OCS's] abbreviated case to prove Section 10 [CINA status based on parental substance abuse] would be sufficient to warrant termination" because such an agreement was "entirely inconsistent with th[e] scope of representation" — which was to defend him against OCS's case. He asserts that therefore his attorney's "representation objectively fell below the level of representation that any reasonably competent attorney would provide."

"The standard for effective assistance of counsel is 'that [counsel's] decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the . . . law, regardless of the outcome of such decisions.' "[10] "[L]awyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill."[11]

We also recognize that "reasonable tactical decisions are virtually immune from subsequent challenge even if, in hindsight, better approaches could have been taken."[12] Reasonable tactical decisions have included stipulating to testimony instead of

---

[10] *P.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1127, 1131 (Alaska 2002) (alteration in original) (quoting *V.F. v. State*, 666 P.2d 42, 46 (Alaska 1983)).

[11] *S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 16 (Alaska 2002) (quoting *Risher*, 523 P.2d at 424).

[12] *Chloe W.*, 336 P.3d at 1265 (quoting *Chloe O.*, 309 P.3d at 858-59).

requiring live testimony[13] and deciding not to subpoena a reluctant witness,[14] not to call a certain witness,[15] and not to conduct a cross-examination.[16]

We cannot say that Jackson's attorney's actions fell outside the range of reasonable actions which might have been taken by an attorney skilled in the law.[17] The choice to allow OCS to put on an abbreviated case — in hopes that it would prove insufficient to support termination — could well be a reasonable tactical decision. And the attorney's actions show that she did contest the case. She cross-examined the caseworker on subjects that could have helped her client, including Jackson's reasons for refusing the hair follicle test, the locations of his visits with Brittany, the phone numbers the caseworker used to try to reach him, whether he was aware of his rescheduled domestic violence assessment, and his behavior during his visits. Jackson's attorney also submitted written closing arguments challenging OCS's proof on the necessary elements of its case, including whether Brittany was a child in need of aid; whether Jackson remedied the conduct or conditions making her in need of aid; whether OCS made "active efforts";[18] whether OCS showed that "the evidence, including testimony of qualified expert witnesses, establishe[d] beyond a reasonable doubt that the continued

---

[13]    *See id.* at 1265-66.

[14]    *V.F.*, 666 P.2d at 47.

[15]    *See Chloe O.*, 309 P.3d at 859.

[16]    *See David S. v. State, Dep't of Health & Soc. Servs, Office of Children's Servs.*, 270 P.3d 767, 785-86 (Alaska 2012).

[17]    *See P.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 42 P.3d 1127, 1131 (Alaska 2002).

[18]    *See* 25 U.S.C. § 1912(d) (2018).

custody of the child by the parent . . . [was] likely to result in serious emotional or physical damage to the child";[19] and whether termination was in Brittany's best interests.

Jackson's attorney's failure to cross-examine the ICWA expert and Jackson's aunt, as objectively reasonable tactical decisions,[20] are "virtually immune from subsequent challenge."[21] It could be that the attorney chose not to ask questions that would elicit damaging answers. The absence of cross-examination reemphasizing certain aspects of the testimony may have been intended to strengthen Jackson's closing argument that there was insufficient evidence of his substance abuse. In sum, Jackson fails to demonstrate the first prong of our ineffective assistance of counsel test: that his attorney's performance fell short of what a reasonably competent attorney would provide.[22]

**B.     Jackson Does Not Demonstrate That An Improved Performance By His Attorney Would Have Affected The Outcome Of His Case.**

Jackson also argues that his attorney's actions prejudiced the outcome of his case. He claims that his attorney's failure to cross-examine the ICWA expert and Jackson's aunt was "inexplicable" absent an agreement with OCS not to oppose its case. And he argues that letting in "unfettered testimony that both parents have drug problems that present a substantial risk of emotional or physical harm to [Brittany] . . . all but ensured termination." While acknowledging that his attorney did cross-examine the caseworker and submit closing arguments, Jackson argues that these actions were not

---

[19]     *See* 25 U.S.C. § 1912(f).

[20]     *See David S.*, 270 P.3d at 785-86.

[21]     *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1265 (Alaska 2014) (quoting *Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 858-59 (Alaska 2013)).

[22]     *See id.*

enough to "counterbalance[] the testimony and evidence that [his attorney] let in unchallenged."

Under the second prong of the ineffective assistance test, the litigant must "demonstrate that counsel's improved performance would have affected the outcome of the case."[23] The litigant should "specify how he thinks the trial would have been different if his counsel had taken a different approach."[24]

Jackson does not explain how the trial outcome would have been different had his attorney cross-examined witnesses besides the OCS caseworker. He does not argue that the termination was unjustified based on the evidentiary record as it was presented at trial. He fails to identify any "additional, relevant evidence" that his attorney could have provided.[25] While taking issue with his attorney's failure to cross-examine witnesses, he does not explain what questions she should have asked, what information those questions would have elicited, and how that information would have affected the outcome of the case. Jackson's ineffective assistance of counsel claim therefore fails on the second prong of the test as well as the first.

## V. CONCLUSION

We AFFIRM the superior court's termination order.

---

[23] *Id.*; *see also S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 61 P.3d 6, 16 (Alaska 2002) (requiring parent to make "a showing that 'the lack of competency contributed' to the adverse result" (quoting *Risher v. State*, 523 P.2d 421, 425 (Alaska 1974))).

[24] *David S.*, 270 P.3d at 786.

[25] *See id.* (quoting *In re M.B.*, 647 A.2d 1001, 1005 (Vt. 1994)).