NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| ANDREW ALLEN AMAROK,<br><br>               Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>               Appellee. | Court of Appeals No. A-13846<br>Trial Court No. 3AN-14-10523 CI<br><br>O P I N I O N<br><br>No. 2770 — January 26, 2024 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Barbara Dunham, Attorney at Law, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge ALLARD.

A jury convicted Andrew Allen Amarok of first-degree murder for killing his stepfather, Dennis Kane.[1] After this Court affirmed Amarok's conviction on direct

---

[1] AS 11.41.100(a)(1)(A).

appeal,[2] Amarok filed an application for post-conviction relief alleging that his trial attorney had provided ineffective assistance of counsel. The superior court dismissed the application for failure to state a *prima facie* case. On appeal, Amarok does not argue that his application stated a *prima facie* case. Instead, he argues that his post-conviction relief attorney's representation was so deficient that he is entitled to a remand under our decisions in *Tazruk* and *Demoski*.[3]

The State disputes that a remand is the appropriate remedy under the facts of this case, and the State argues that Amarok should be required to file a second post-conviction relief application under *Grinols* if Amarok wants to argue that he received ineffective assistance of counsel from his post-conviction relief attorney.[4] The State also argues that we should overrule *Tazruk* and *Demoski* as erroneous and unworkable.

For the reasons explained here, we continue to adhere to *Tazruk* and *Demoski* in cases where the post-conviction relief attorney's representation is so facially deficient as to raise serious concerns about the post-conviction relief attorney's basic competence and diligence. We agree, however, with the State that the current case does not fall within this narrow category of cases because the record shows that the post-conviction relief attorney actively litigated Amarok's post-conviction relief claims and provided the necessary supporting affidavits for those claims.

We therefore affirm the dismissal of Amarok's application for post-conviction relief for failure to state a *prima facie* case. To the extent that Amarok believes his post-conviction relief attorney provided ineffective assistance of counsel, he may pursue such a claim through a *Grinols* application.

---

[2] *Amarok v. State*, 2014 WL 1779309, at *1, *5 (Alaska App. Apr. 30, 2014) (unpublished).

[3] *See Demoski v. State*, 449 P.3d 348 (Alaska App. 2019); *Tazruk v. State*, 67 P.3d 687 (Alaska App. 2003).

[4] *See Grinols v. State*, 74 P.3d 889, 894-95 (Alaska 2003).

*The constitutional principles that underlie our decisions in <u>Tazruk</u> and <u>Demoski</u>*

As this Court recognized in *Griffin v. State*, "Courts have the constitutional responsibility to make sure that an indigent defendant's application for post-conviction [relief] is 'resolved in a way that is related to the merit' of the petition — not dismissed simply because the defendant's attorney is unwilling to devote the necessary effort to the case."[5]

When an attorney is appointed to represent an indigent defendant in a post-conviction relief case, the attorney has three options: (1) the attorney may proceed on the claims alleged in the original *pro se* application; (2) the attorney may file an amended application; or (3) the attorney may file a certificate of no merit.[6]

If the attorney files a certificate of no merit, the attorney "must provide the court with a full explanation of all the claims the attorney has considered and why the attorney has concluded that these claims are frivolous."[7] This full explanation is required so that the trial court can perform its own independent assessment of the potential merit of the defendant's post-conviction relief case.[8] As we explained in *Griffin*:

> The independent judicial assessment required by Rule 35.1(f)(2) is crucial to the protection of indigent petitioners' right to counsel. For, as the United States Supreme Court explained in *Robbins*, the right to counsel includes "the right to have an attorney, zealous for the indigent's interests, evaluate [the] case and attempt to discern [any] nonfrivolous arguments." Protection of this

---

[5]   *Griffin v. State*, 18 P.3d 71, 75-76 (Alaska App. 2001); *see also Smith v. Robbins*, 528 U.S. 259, 278 n.10 (2000).

[6]   *See* Alaska R. Crim. P. 35.1(e)(2).

[7]   *Griffin*, 18 P.3d at 77.

[8]   *Id.*

right to a zealous advocate is especially important because, under Alaska law, a defendant is normally entitled to only one petition for post-conviction relief.[9]

The trial court's duty to protect an indigent defendant's right to a zealous advocate is not limited to situations in which the post-conviction relief attorney files a certificate of no merit. The same duty also applies when a post-conviction relief attorney relies on a facially deficient *pro se* application or when a post-conviction relief attorney files a facially deficient amended application.[10]

Thus, in *Tazruk v. State*, we remanded a post-conviction relief case to the superior court for further proceedings because the post-conviction relief attorney elected to rely on a facially deficient *pro se* application and the "record contain[ed] no indication that Tazruk's attorney ever investigated these claims, sought to adduce support for them through discovery, or sought to reformulate them so that they might survive a motion to dismiss."[11] We concluded that this record — which showed only the attorney's "inaction and ultimate concession of defeat" — was "insufficient to allow the courts to carry out their constitutional duty to make sure that an indigent petitioner receives zealous and competent representation."[12]

---

[9] *Id.* (alterations in original) (citing *Robbins*, 528 U.S. at 278 n.10).

[10] *Tazruk v. State*, 67 P.3d 687, 692 (Alaska App. 2003), *Demoski v. State*, 449 P.3d 348, 350-51 (Alaska App. 2019).

[11] *Tazruk*, 67 P.3d at 691 (emphasis omitted).

[12] *Id.* In a separate concurrence, Judge Coats noted that filing a certificate of no merit "requires a substantial effort on the part of an attorney who determines that his client's claims are frivolous[,]" and he speculated that Tazruk's attorney was trying to evade this burden by proceeding on a "patently frivolous" *pro se* application. Judge Coats then emphasized that to allow such evasion would be to neglect "our independent duty to protect Tazruk's right to the effective assistance of counsel in pursuing his application for post-conviction relief[.]" *Id.* at 693-94 (Coats, C.J., concurring).

We reached a similar conclusion in *Demoski v. State*, a case in which the appointed attorney abandoned numerous *pro se* claims for post-conviction relief in favor of an amended application that raised only one procedurally barred claim for relief.[13] Like the attorney in *Tazruk*, the attorney in *Demoski* made little effort to defend the facially deficient application — and when the State moved to dismiss the case based on an obvious procedural bar, the post-conviction relief attorney filed a non-responsive pleading that did not provide any substantive argument for why the claim was not procedurally barred.[14] We concluded that the record supported only one of two conclusions: either (1) the attorney was incompetent for failing to recognize that the procedurally barred claim was patently frivolous; or (2) the attorney was aware that the barred claim was patently frivolous and was trying to avoid the work that filing a certificate of no merit would require.[15] In either case, however, the trial court's duty to protect the defendant's constitutional right to a competent and zealous advocate was implicated, and further proceedings were required to ensure that the right was adequately protected.[16]

As we explained in *Demoski*, our focus in the post-*Tazruk* cases has been on (1) whether the application before the court was "plainly deficient on its face"; (2) whether the attorney "sought to defend" the application; and (3) whether the record revealed that the attorney had "investigated or analyzed the petitioner's claims or

---

[13]  *Demoski*, 449 P.3d at 349.

[14]  *Id.*; *see Tazruk*, 67 P.3d at 690.

[15]  *Demoski*, 449 P.3d at 351.

[16]  *Id.*; *see also McMann v. Richardson*, 397 U.S. 759, 771 (1970) (recognizing trial judge's duty to "maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts"); *see generally* William W. Schwarzer, *Dealing with Incompetent Counsel – The Trial Judge's Role*, 93 Harv. L. Rev. 633, 649 (1980).

potential claims."[17] Thus, in cases where the application appears to be facially deficient and the attorney fails to offer "any substantive explanation for why the application is not facially deficient," we have encouraged trial courts to hold a hearing to determine whether the appointed attorney "will elect to cure the defect, or instead file a certificate of no merit."[18]

In a footnote in *Demoski*, we also provided some guidance on what types of applications qualify as "facially deficient" or "plainly deficient on its face." As we explained:

> A petition that is "plainly deficient on its face" generally will fall into one or more of the following narrow categories: 1) the claims clearly are procedurally barred; 2) the claims clearly are factually inaccurate (as in *Tazruk*); 3) the claims are unsupported by any evidence or argument; or 4) the petition alleges ineffective assistance of counsel, but does not contain either the required affidavit from trial counsel or an explanation as to why the affidavit could not be obtained.[19]

As the above quote indicates, our expectation was that only a narrow subset of cases would qualify as "plainly deficient on its face."

---

[17]  *Demoski*, 449 P.3d at 350; *see, e.g.*, *Vann v. State*, 2016 WL 936765, at *1-2 (Alaska App. Mar. 9, 2016) (unpublished) (remanding case where application was facially deficient and lacked an affidavit from the trial attorney and where the post-conviction relief attorney filed a one paragraph conclusory opposition to the State's motion to dismiss); *Beshaw v. State*, 2012 WL 1368146, at *6 (Alaska App. Apr. 18, 2012) (unpublished) (remanding case where application did not include any supporting evidence or citations to the record, and the attorney's minimal opposition to the State's motion to dismiss was the "equivalent of filing a 'no merit' certificate without providing the explanations required by *Griffin* and Criminal Rule 35.1(e)(2)"); *Duncan v. State*, 2008 WL 5025424, at *3 (Alaska App. Nov. 26, 2008) (unpublished) (remanding case where attorney relied on the defendant's clearly deficient *pro se* application and attorney did nothing to explain what investigation they had conducted or what claims they had considered and rejected).

[18]  *See Demoski*, 449 P.3d at 351.

[19]  *Id.* at 351 n.18.

*Why we conclude that Amarok's post-conviction relief application was not plainly deficient on its face*

On appeal, Amarok argues that the trial court erred in dismissing his post-conviction relief application for failure to state a *prima facie* case. He claims that the application was plainly deficient on its face and the trial court should have done more to ensure that the post-conviction relief attorney provided competent and zealous representation.

But a review of the post-conviction relief attorney's actions in this case demonstrates that the attorney actively investigated and litigated multiple claims for post-conviction relief. While there may have been errors in the representation, none of the errors would be so obvious as to qualify as plainly deficient representation under *Tazruk* and *Demoski*.

Significantly, a review of the record reveals that Amarok's first appointed attorney *was* plainly deficient. After Amarok filed his *pro se* application, Amarok was assigned a contract attorney with the Office of Public Advocacy. For more than a year, that attorney did nothing other than file requests for extensions of time. When the attorney missed the final deadline to file an amended application, the superior court dismissed Amarok's post-conviction relief case.

This dismissal was plainly erroneous because it should have been clear to the superior court that Amarok had not received constitutionally adequate representation. An attorney with the Office of Public Advocacy later filed a motion to reopen the post-conviction relief case under Alaska Civil Rule 60(b)(6), which the superior court granted.

After the case was reopened, a different contract attorney was assigned to represent Amarok. This attorney also filed numerous extension requests. However, unlike the requests filed by the first attorney, these requests were accompanied by affidavits that informed the superior court of the attorney's ongoing efforts to review and investigate the case. The affidavits indicated that the case was "incredibly

complex," and that the record included "15,000 pages of documents along with multimedia." The affidavits also stated that the attorney and her staff were "diligently working" on the case, that "significant work" had been done, and that she was "coordinating" with a DNA expert.

The following month, the assigned attorney filed an amended application for post-conviction relief raising numerous claims of ineffective assistance of counsel against Amarok's trial attorney. The amended application was eighteen pages long and included citations to the trial court record and the trial transcripts. However, it did not include affidavits from Amarok or from his trial attorney.

The State moved to dismiss the application for failure to state a *prima facie* case, noting these deficiencies.

In response, the attorney filed a fourteen-page opposition and the attorney filed two motions to supplement the record. The first motion to supplement included affidavits from Amarok, from his trial attorney, and from a forensic scientist specializing in DNA analysis. The affidavit from Amarok was four pages long and provided support for various factual assertions in the amended application. The affidavit from trial counsel was three pages long and included the trial counsel's responses to Amarok's ineffective assistance of counsel allegations. The affidavit from the forensic scientist was five pages long and included the testimony that the scientist would have given if called as a DNA expert in Amarok's case.

The second motion to supplement the record included a memorandum from an experienced criminal defense attorney who opined that Amarok's trial attorney had provided ineffective assistance of counsel when she failed to file a sentencing memorandum in Amarok's case.

Ultimately, the superior court dismissed the amended application for failure to state a *prima facie* case for relief, but it did so only after accepting the first supplementation to the record and only after reviewing Amarok's lengthy opposition and the State's response.

Following the dismissal, Amarok's attorney filed a fourteen-page motion for reconsideration in which she reiterated the reasons why she believed the pleadings established a *prima facie* case for relief on a number of the post-conviction claims, including the DNA expert claim and the ineffective assistance of counsel at sentencing claim. The superior court denied the motion for reconsideration, and this appeal followed.

Amarok is represented by a different attorney on appeal. His appellate attorney does not argue that Amarok's pleadings stated a *prima facie* case for relief on any of its claims. Instead, the appellate attorney attacks the pleadings as plainly deficient under *Tazruk* and *Demoski*. According to the appellate attorney, the superior court erred in dismissing the amended application and the court should have done more to ensure that Amarok received constitutionally adequate representation.

We disagree that the petition before the court was plainly deficient on its face.[20] Although the appellate attorney points to certain factual misrepresentations in the post-conviction relief attorney's pleadings, the errors that the appellate attorney notes are not immediately obvious without a thorough full review of the case. In other words, the alleged errors do not constitute the type of facial deficiencies that this Court identified and described in *Demoski*.[21] That is, the claims are neither procedurally barred nor unsupported by any evidence or argument.[22] Additionally, the attorney did not fail to provide affidavits required to support Amarok's claims.[23]

---

[20] *See id.* at 350 ("Our focus has been on whether the petition before the court was plainly deficient on its face[.]").

[21] *See id.* at 351 n.18.

[22] *See id.*

[23] *See id.*

This is not to say that the appellate attorney's criticisms of the post-conviction relief attorney's performance are invalid. Indeed, it is possible that Amarok may have a viable *Grinols* claim for ineffective assistance of counsel if he can establish both incompetent performance and prejudice under *Risher*.[24] But a *Tazruk*/*Demoski* remand is limited to those situations where the representation is so facially inadequate as to obviate the need to show prejudice.[25] Because the record here does not demonstrate that level of constitutionally inadequate representation, it was not error for the superior court to dismiss the application for failure to state a *prima facie* case without taking any further action under *Tazruk* or *Demoski*.

### *Why we reject the State's argument that <u>Tazruk</u> and <u>Demoski</u> should be overruled*

The State argues that we should reconsider our decisions in *Tazruk* and *Demoski* and that we should overturn the line of cases deriving from these decisions. However, under the well-settled rule of *stare decisis*, we must adhere to our precedents unless we are "clearly convinced" that (1) a decision was "originally erroneous or is no longer sound[,]" and (2) that "more good than harm" would result from overruling it.[26]

The State's primary argument for overruling *Tazruk* and *Demoski* is its claim that the decisions are inconsistent with the two-prong test for ineffective assistance of counsel under *Risher v. State*.[27] But as Amarok points out in his reply brief, *Tazruk* and *Demoski* complement and support the two-prong test under *Risher*.

---

[24]   *See Risher v. State*, 523 P.2d 421, 425 (Alaska 1974).

[25]   *Demoski*, 449 P.3d at 351 n.18; *see United States v. Cronic*, 466 U.S. 648, 654 n.11 (1984).

[26]   *See Wassillie v. State*, 411 P.3d 595, 611 (Alaska 2018) (citing *Thomas v. Anchorage Equal Rts. Comm'n*, 102 P.3d 937, 943 (Alaska 2004)).

[27]   *Risher*, 523 P.2d at 425.

In *Risher v. State*, the Alaska Supreme Court created a two-prong test for evaluating a state constitutional claim of ineffective assistance of counsel.[28] Under the first prong — the performance prong — the defendant must establish that their trial attorney failed to "perform at least as well as a lawyer with ordinary training and skill in the criminal law[.]"[29] The test is one of minimal competence; the defendant must show "a level of performance that no reasonably competent attorney would provide."[30]

Under the second prong — the prejudice prong — the defendant must establish a "reasonable doubt" that their attorney's ineffective performance "contributed to the outcome."[31] In other words, the defendant "must create a reasonable doubt as to whether counsel's lack of competency contributed to the conviction."[32]

The State argues that *Tazruk* and *Demoski* are inconsistent with the *Risher* test because, according to the State, they provide appellate relief based only on a showing of incompetent performance, without requiring any showing of prejudice.

---

[28] *Id.* at 424-25.

[29] *Id.*

[30] *State v. Jones*, 759 P.2d 558, 568 (Alaska App. 1988).

[31] *Risher*, 523 P.2d at 425; *see also Jones*, 759 P.2d at 572; *Tucker v. State*, 892 P.2d 832, 834 (Alaska App. 1995). Notably, this is a lower standard than the standard used under *Strickland v. Washington* to evaluate a federal constitutional claim of ineffective assistance of counsel. *Strickland* also uses a two-prong test, and its first prong (the performance prong) is essentially identical to the first prong under *Risher*. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). But its second prong (the prejudice prong) requires the defendant to establish a "reasonable probability" that, but for the attorney's incompetent performance, the outcome of the proceeding would have been different. *Id.* at 694. In contrast, under *Risher*, the defendant need only create a "reasonable doubt that the incompetence contributed to the outcome." *See Risher*, 523 P.2d at 425; *see also Jones*, 759 P.2d at 572 (explaining the differences between *Strickland* and *Risher* as to prejudice).

[32] *Tucker*, 892 P.2d at 834.

But in *United States v. Cronic*, the United States Supreme Court recognized that there can be instances where a defense attorney's performance is so deficient as to trigger a presumption of prejudice.[33] Such instances are rare and include circumstances where the attorney's representation is so appallingly poor as to effectively not count as representation at all.[34] As the Court explained in *Cronic*, "Assistance begins with the appointment of counsel, [but] it does not end there. In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided."[35] Thus, for example, if a trial attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of

---

[33] *United States v. Cronic*, 466 U.S. 648, 654 (1984) ("If no actual 'Assistance' 'for' the accused's 'defence' is provided, then the constitutional guarantee has been violated."); *see also United States v. Ragin*, 820 F.3d 609, 618 (4th Cir. 2016) (recognizing under *Cronic* that "counsel's incompetence can be so serious that it rises to the level of a constructive denial of counsel which can constitute constitutional error without any showing of prejudice" (quoting *Strickland*, 466 U.S. at 703 n.2 (Brennan, J., concurring in part and dissenting in part))); *United States v. Griffin*, 324 F.3d 330, 364 (5th Cir. 2003) ("A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." (quoting *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000))).

[34] *Cronic*, 466 U.S. at 658-59. In *Cronic*, the United States Supreme Court recognized three distinct situations in which a presumption of prejudice is appropriate. First, prejudice is presumed when the defendant is completely denied counsel "at a critical stage of his trial." *Id.* at 659. Second, prejudice is presumed if there has been a constructive denial of counsel. *Id.* This happens when a lawyer "fails to subject the prosecution's case to meaningful adversarial testing," thus making "the adversary process itself presumptively unreliable." *Id.* Third, the Court identified certain instances when "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60 (citing, as an example, *Powell v. Alabama*, 287 U.S. 45 (1932)).

[35] *Id.* at 654 n.11 (quoting *United States v. Decoster*, 624 F.2d 196, 219 (D.C. Cir. 1976) (MacKinnon, J., concurring)).

Sixth Amendment rights that makes the adversary process itself presumptively unreliable."[36]

Tazruk and Demoski recognize that there can likewise be instances where a post-conviction relief attorney's performance is so deficient as to not even qualify as assistance at all. However, unlike in Cronic, where the remedy is a new trial, the remedy under Tazruk and Demoski is purely procedural — the defendant does not obtain post-conviction relief on their claims; instead, they receive a remand so that those claims can be properly litigated in the first instance.[37]

Tazruk and Demoski therefore recognize that a defendant who has received only patently incompetent representation in a post-conviction relief proceeding has not actually received the benefits of representation to which they are entitled. In those circumstances, it is incumbent on the trial courts to take action to safeguard the defendant's right to effective assistance of post-conviction relief counsel by requiring the attorney to cure any obvious defects in the application (or by replacing the attorney if they prove incapable of providing the bare minimum required for competent representation in the post-conviction relief context).[38] Likewise, it is

---

[36] Id. at 659; see also Ragin, 820 F.3d at 619-20 (finding presumptive prejudice where counsel was asleep during a substantial portion of trial); United States v. Collins, 430 F.3d 1260, 1266 (10th Cir. 2005) (finding presumptive prejudice where trial counsel "stood silent . . . and did not subject the prosecution's case to adversarial testing").

[37] Cronic, 466 U.S. at 659; Demoski v. State, 449 P.3d 348, 351 (Alaska App. 2019); cf. Penson v. Ohio, 488 U.S. 75, 88 (1988) (holding that actual or constructive denial of counsel on appeal triggers presumption of prejudice and requires remand).

[38] See McMann v. Richardson, 397 U.S. 759, 771 (1970) ("[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and . . . judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts.").

incumbent on the appellate courts to remand a case for further proceedings if the record demonstrates that the defendant has yet to receive facially competent representation.[39]

The State argues that *Tazruk* and *Demoski* remands are overly burdensome and create unnecessary delay in the system. But in a functioning criminal justice system where post-conviction relief attorneys are adequately trained and resourced, such remands should be rare. As the current case demonstrates, *Tazruk* and *Demoski* do not apply to cases where the record shows that the attorney actively investigated and litigated the case and where the application is not plainly deficient on its face. This is because *Tazruk* and *Demoski* do not guarantee error-free representation; instead, they are focused only on the most obvious examples of attorney incompetence and lack of diligence. Moreover, the remedy they provide — a remand for further proceedings — is a modest one that is designed only to restore the defendant's ability to receive the competent and diligent representation they have yet to receive.

The State also argues that *Tazruk* and *Demoski* remands are unnecessary because a defendant who has been deprived of the effective assistance of counsel in his post-conviction relief proceeding can always file a second application under *Grinols v. State*.[40] In *Grinols*, the Alaska Supreme Court held that the statutory bar against successive post-conviction relief applications does not apply when a defendant files a second post-conviction relief application alleging that their first post-conviction relief attorney provided ineffective assistance of counsel.[41] To succeed on a *Grinols* application, a defendant must show not only that their first post-conviction attorney performed incompetently, but also that they were actually prejudiced by that

---

[39]   *See Demoski*, 449 P.3d at 351; *Tazruk v. State*, 67 P.3d 687, 691-92 (Alaska App. 2003); *Griffin v. State*, 18 P.3d 71, 77 (Alaska App. 2001).

[40]   *See Grinols v. State*, 74 P.3d 889, 895 (Alaska 2003).

[41]   *Id.*

incompetence — that is, they must show that they have a meritorious claim for post-conviction relief that would have resulted in relief if it had been litigated competently.[42]

We agree with the State that *Grinols* provides a mechanism for a defendant to obtain post-conviction relief in cases where they can show that they have been prejudiced by their post-conviction relief attorney's incompetence. But we disagree that this mechanism renders the remand remedy provided by *Tazruk* and *Demoski* unnecessary. As already explained, *Tazruk* and *Demoski* remands are reserved for situations in which the attorney's failure to comply with the basic requirements of post-conviction relief litigation is so plainly obvious that the presumption of attorney competency cannot be maintained.[43] A remand is appropriate in those situations because, practically speaking, the defendant has yet to receive the representation to which they are entitled. Requiring the defendant to shoulder the administrative and financial burden of filing a *Grinols* application under those circumstances is unfair, particularly because there is no constitutional right to counsel for a *Grinols* application.[44]

In sum, for all the reasons discussed above, we conclude that *Tazruk* and *Demoski* remain good law and help safeguard a defendant's right to competent counsel in the post-conviction relief context. We therefore decline the State's request to overrule our prior precedent.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[42]   *Grinols v. State*, 10 P.3d 600, 618 (Alaska App. 2000).

[43]   *Demoski*, 449 P.3d at 351 & n.18.

[44]   *Grinols*, 10 P.3d at 604; *Grinols*, 74 P.3d at 891, 895-96 (holding that a defendant has the right to bring a second *Grinols* application challenging the effectiveness of counsel, but not finding that there is a right to counsel at public expense).